GEORGE L. SCHNADER *v.* WILLIAM L. BROOKS
ET AL.

*Action For Deceit—Concealment By Vendor—Action By
Purchaser.*

The foundation of the action of deceit is actual fraud, and
nothing short of this will suffice.                          p. 56

To entitle the plaintiff to recover in an action of deceit, the
misrepresentation must be of an existing fact, or facts, and not
merely of some future or contingent event, or an expression of
opinion.                                                    p. 57

A concealment of the truth becomes a fraud where it is
effected by misleading and deceptive talk, acts, or conduct, or
is accompanied by misrepresentations, or where, in addition
to a party's silence, there is any statement, word, or act, on
his part, which tends affirmatively to the suppression, cover-
ing up, or disguising of the truth, or to a withdrawal or dis-
traction of a party's attention from the real facts.        p. 57

That, some months after the making of a contract for the
sale of a house and lot, the vendor covered a surface drain on
the property, so as to render it invisible, did not involve a
fraud justifying an action of deceit by the purchaser, since
this could not have affected the latter's determination to pur-
chase.                                                      p. 58

The failure of the vendor, at the time of the sale, to mention
an open or surface drain on the property, did not involve a
fraud on which to base an action of deceit, if unaccompanied
by misrepresentations, and without any misleading talk, acts,
or conduct on his part in an attempt to suppress the fact of
the drain, even though the drain was not seen or known of by
the purchaser.                                              p. 58

In an action of deceit by the purchasers of property against
the vendor, a prayer by plaintiffs is erroneous if it allows a
recovery without the necessity of a finding by the jury that
plaintiffs would not have purchased the property if the alleged
fraudulent concealment had not been made.                   p. 59

A prayer, offered at the conclusion of all the evidence, which attempts to raise the question of the legal insufficiency of the evidence, is bad in form if it confines the evidence offered to that of the plaintiffs.                                        ·        p. 59

*Decided February 10th, 1926.*

Appeal from the Baltimore City Court (DUKE BOND, J.).

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

Action by William L. Brooks and Anna L. Brooks, his wife, against George L. Schnader and Anna B. Schnader, his wife. From a judgment for plaintiffs against the first named defendant, he appeals. Reversed.

*Charles Jackson,* with whom was *Arthur R. Padgett* on the brief, for the appellant.

*William W. Powell,* with whom was *Isidor Goldstrom* on the brief, for the appellees.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment recovered by the appellees, William L. Brooks and wife, against the appellant, George L. Schnader, in an action of deceit.

The suit, as brought, was against Schnader and his wife and judgment was recovered against both, but, upon a new trial being granted the wife, the appellees' counsel dismissed the suit as to her.

George L. Schnader and wife were owners of undeveloped property on Pinoak Avenue in the City of Baltimore. In November, 1923, the husband agreed with the appellees to build a dwelling house upon a lot of ground located on said avenue, and when the house was completed to convey it, together with the lot upon which it was erected, unto the appellees for the amount, and upon the terms, mentioned in the agreement.

The house was completed in March, 1924, at which time the property was conveyed to the appellees, who took possession of and occupied it.

The declaration alleges that the plaintiffs "were told by the defendants and believed that the said property was in good condition and without material defect"; that some time in June, 1924, they ascertained that a stream of water crossed under the surface of the property, within a few feet of the kitchen, extending across the entire width of their lot, a distance approximately of forty feet, and further alleging therein that the defendants had concealed the same by covering over the said stream so that it was not visible to the plaintiffs; that when it was discovered by the plaintiffs, the water thereof was polluted and foul and was highly injurious to the health and comfort of the plaintiffs and tended to deteriorate and depreciate the value of their property; that the presence of the foul-smelling and polluted stream of which the plaintiffs, to such time, had no knowledge or means of ascertaining such knowledge, was fraudulently withheld and concealed from the plaintiffs by the defendants, who had full knowledge of its presence upon the property; that with such knowledge they were under the legal obligation to communicate such facts to the plaintiffs "and that had the defendants communicated to the plaintiffs * * * the presence upon said property of the polluted and foul-smelling stream of water the plaintiffs would not have purchased the * * * property from the defendants * * *. That the defendants did in fraud and deceit withhold from the plaintiffs the knowledge of the presence of said foul-smelling and polluted stream of water upon said premises and * * * that the fraudulent and false concealment of the very material defect of said property, the presence of the aforesaid polluted and foul-smelling stream" thereon, "and the * * * withholding of the knowledge possessed by the defendants of the presence upon said property of the aforesaid stream of water, resulted in the * * *

purchase by the plaintiffs of the property * * * from the defendants."

And the declaration further alleged that said "action of the defendants was a deceit and fraud practiced upon them and as the direct result of the * * * false and fraudulent representations made to them as to the good condition of said property, and as a result of the aforesaid fraud and deceit practiced upon them by the defendants they have been injured and damaged," etc.

The general issue plea was filed by each of the defendants, and at the conclusion of the evidence the court granted to the plaintiffs the following modified prayer:

"The court instructs the jury that if they believe from the evidence that George L. Schnader and Anna B. Schnader, his wife, sold to William L. Brooks and Anna L. Brooks, his wife, property known as No. 4 Pinoak Avenue, in the City of Baltimore, and State of Maryland, on or about March twenty-eighth, in the year 1924, for the sum of fifty-five hundred dollars, subject to an annual ground rent of seventy-two dollars, and they further believe that there was a stream upon said property and that the defendants had knowledge of the presence of such stream upon said property, if the jury so find, and if the jury further believe that the defendants withheld said knowledge from the plaintiffs and if the jury believe that the plaintiffs did not know nor by the exercise of reasonable care could have known of the presence of said stream upon said property, and if the jury believe that the presence of said stream upon said property materially affects the value of said property, then the verdict of the jury should be for the plaintiffs."

This Court has established the principles which are controlling in this case by a series of cases, among which are *McAleer v. Horsey,* 35 Md. 439; *Buschman v. Codd,* 52 Md. 202; *Robertson v. Parks,* 76 Md. 118; *Byrd v. Rautman,* 85 Md. 414; *Cahill v. Applegarth,* 98 Md. 493; *Boulden v. Stillwell,* 100 Md. 543; *Gitlings v. Von Dorn,* 136 Md. 10.

It was said in *McAleer v. Horsey, supra,* Judge Miller

speeaking for the Court, that "neither the common law nor any code of human law seeks to enforce the rule of perfect morality declared by Divine authority, which acknowledges as its one principle the duty of doing to others as we would that others should do to us, and which, by consequence, absolutely excludes and prohibits all cunning and craft or astuteness practiced by any one for his own exclusive benefit. And it thence follows that a certain amount of selfish cunning passes unrecognized by courts of justice, and that a man may procure to himself, in his dealings with others, some advantages to which he has no moral right, but to which he may succeed in establishing a perfect legal title. But if any one carries this too far; if by craft and selfish contrivance he inflicts an injury upon his neighbor and acquires a benefit to himself beyond a certain point, the law steps in, annuls all he has done, or rectifies the wrong by sustaining an action for the deceit. The practical question then is, where is this point? And to this no specific answer is afforded. The common law does not only give no definition of fraud, but perhaps wisely asserts as a principle that there shall be no definition of it, for, as it is the very nature and essence of fraud to elude all laws in fact, without appearing to break them in form, the technical definition of fraud, making everything come within the scope of its words before the law could deal with it as such, would be in effect telling to the crafty precisely how to avoid the grasp of the law. Whenever, therefore, any court has before it a case in which one has injured another directly or indirectly by falsehood or artifice, it is for the court to determine in that case whether what was done amounts to cognizable fraud."

The foundation of the action is actual fraud, and nothing short of this will suffice. *Boulden v. Stillwell, supra.* To entitle the plaintiff to recover it must be shown, as was said in *Gittings v. Von Dorn, supra:* "(1) that the representation made is false; (2) that its falsity was either known to the speaker, or the misrepresentation was made with such a reckless indifference to truth as to be equivalent to actual

knowledge; (3) that it was made for the purpose of defrauding the person claiming to be injured thereby; (4) that such person not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and that he would not have done the thing from which the injury resulted had not such misrepresentation been made; and (5) that he actually suffered damage directly resulting from such fraudulent misrepresentation." To these may be added the further requirement that the alleged misrepresentation be of an existing fact, or facts, and not merely of some future or contingent event, or an expression of opinion as to the subject of the statement or misrepresentation, *Boulden v. Stillwell, supra.*

The declaration contains but one allegation of fraud in addition to the one in which the defendants are charged with the concealment of a stream flowing under ground across plaintiff's lot, which in June, after the sale of the property in the preceding November, was said, at such time, to contain polluted and foul-smelling water, and that allegation is that "the plaintiffs were told by the defendants and believed that the said property was in good condition and without material defect." There is nothing in the record showing that any such representation was ever made by the defendants to the plaintiffs, nor is such alleged fact submitted to the jury for its finding in the plaintiffs' prayer. It will be seen that the only alleged misrepresentation or fraud to be considered by us is the one charging the defendants with the concealment of the stream flowing under ground across plaintiff's property, as stated above.

Fraud may consist in a suppression of the truth as well as in the assertion of a falsehood. The concealment becomes a fraud where it is effected by misleading and deceptive talk, acts, or conduct, or is accompanied by misrepresentations, or where, in addition to a party's silence, there is any statement, word, or act on his part, which tends affirmatively to the suppression of the truth, or to a covering up or disguising of the truth, or to a withdrawal or distraction of a

party's attention from the real facts. 12 *R. C. L.* 81; *Allen v. Addington;* 7 Wend. (N. Y.) 9. "There is a distinction between the suppression of a fact and mere silence. Where there is an obligation to speak, a failure to speak will constitute the suppression of a fact; but where there is no obligation to speak, silence cannot be termed suppression," *Chicora Fertilizer Company v. Dunan,* 91 Md. 159.

The jury was told by the prayer of the plaintiffs that if there was a stream upon the property of which the defendants had knowledge, which was not known to the plaintiffs and which could not have been known to them by the exercise of reasonable care, and the defendants withheld such knowledge from the plaintiffs, and the presence of said stream upon the property materially affected its value, then they should find for the plaintiffs.

It is disclosed by the uncontradicted evidence in the case that at the time of the execution of the contract or agreement of sale in November, 1923, there was an open or surface drain upon the property, that it remained an open drain until near, or about, the time of the completion of the building, when it was boxed in and covered with earth to the depth of about six inches. It is in evidence and not denied that both of the plaintiffs were frequently upon the property during the progress of the building. The lot was a small one, forty feet in width and one hundred and fifty feet in depth, and just why the surface drain was not seen by the plaintiffs is difficult to understand, in view of the fact that it was only a few feet from the kitchen. The concealment complained of was the boxing in of the drain and covering it with earth so that it could not thereafter be seen. It is not claimed that the open drain was so concealed at the time of the purchase, for the same was open to their view and, it would seem, could have been seen upon an inspection of the lot. The concealment of the drain in the manner stated, which occurred long after the purchase of the property, could in no wise have affected the plaintiffs' determination to purchase the property; and the mere failure of the defendant, as stated in said prayer, to speak of the open drain upon

the property, though not seen or known of by the plaintiffs, unaccompanied by misrepresentations, and without any misleading talk, acts or conduct on their part in an attempt to suppress such fact, would not become a fraud upon which an action of deceit could be maintained. The prayer is also defective for the reason that it allows the plaintiffs to recover without the necessity of the jury finding that the plaintiffs would not have purchased the property if the concealment mentioned therein had not been made.

There are other questions raised on this appeal, both upon the prayers and the court's ruling on the evidence, but we need not pass upon those questions, as the judgment will be reversed without a new trial because, in our opinion, the evidence offered is legally insufficient to entitle the plaintiffs to recover.

The defendants attempted to raise the question of the legal insufficiency of the evidence by their first prayer, offered at the conclusion of all the evidence, but this prayer we find bad in form, as it confines the evidence offered to that of the plaintiffs. Had the prayer been in proper form we would have reversed the judgment upon the court's ruling in rejecting it.

The above judgment appealed from was entered on the 25th day of April, 1925, and on the 29th day of that month a motion in arrest of said judgment was filed by the defendant upon the ground that the court was without authority to enter the judgment against George L. Schnader after a new trial had been granted the wife. This motion was overruled. On the day of the filing of the motion in arrest of judgment, April 29th, 1925, the defendant also filed a motion to strike out the judgment upon the ground contained in the motion in arrest of judgment. This motion was likewise overruled.

As a discussion of the rulings upon these motions will serve no useful purpose, we will simply state that we find no error in the court's action upon them.

*Judgment reversed without a new trial, with costs to the appellant.*