# EUREKA-MARYLAND ASSURANCE CORPORATION *v.* SANTO SCALCO ET AL.

[No. 38, October Term, 1929.]

*Decided January 7th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Jacob S. New* and *Edward L. Putzel,* for the appellant.

*B. Sydney Becker,* with whom were *James H. Preston* and *Preston & Field,* for the appellees.

SLOAN, J., delivered the opinion of the Court.

The appellant, on March 26th, 1928, issued a policy of insurance for $500 on the life of Sam Scalco, who died April 23rd, 1928, and, upon the appellant's refusal to pay the beneficiaries ("either parent"), they brought suit, and from a judgment in their favor the insurance company appealed. The policy contains this provision: "This policy contains the entire agreement between the Company and the Insured, and the holder and owner hereof." The application for the insurance was not offered in evidence, the reason assigned being that it was not a part of the policy, and that for this reason the evidence as to what was said by and to the agent prior to the application was not admissible. The trial court overruled the appellant's objections to such testimony, and these rulings are the subject of the first three exceptions. On the authority of *Dulany v. Fidelity & Casualty Company,* 106 Md. 17, the testimony objected to was properly admitted.

The fourth exception was to certain hearsay statements of Giovanni Glorioso, an uncle, which were repetitions of facts testified to without objection by the father, Santo Scalco, and were therefore harmless and not reversible error. *Kiterakis v. State,* 144 Md. 81, 83. The fifth exception was to the rulings of the court refusing the defendant's (appellant's) first, second, fourth, and sixth prayers, all of which were requests for an instructed verdict for the defendant.

The plaintiffs (appellees) offered in evidence the policy and the proof of death, to which was attached the death record from the Health Department of Baltimore, showing the cause of death to be "epilepsy, hemorrhage and asphyxia." They also offered in evidence the premium receipt book show-

ing payments of eighteen cents per week for five weeks, signed by "Collector Scinta."

The plaintiff then rested, and the defendant called Dr. Frank W. Keating, who has been in charge of the Rosewood State Training School since 1896, and who produced the "Personal Description Blank," containing 107 questions and answers signed by the father, Santo Scalco, when he applied for the admission of his son, Sam Scalco, to the school in 1925. It shows that Sam Scalco was an epileptic, of little mentality from early infancy. Dr. Keating, in addition to proving the application of the father for the admission, testified that "Sam Scalco was not in sound health on March 26th, 1928; he had epilepsy and also had chronic inflammation of the ear, either of which would have prevented him from being in sound health." The policy contained a condition that "No obligation is assumed by the company prior to the date hereof, nor unless on said date the Insured is alive and in sound health." The appellant contends that, even if the agent did know about the epileptic condition of the insured, if he was not told of the ear condition, that failure or omission would avoid the policy.

The testimony of the appellees in rebuttal, to which there was no contradiction, was that the policy sued on was solicited by an agent of the company named Scinta, who had already written a policy on the life of Sam Scalco, with his uncle, Giovanni Glorioso, as beneficiary, payment of which was refused, but which, by agreement, is to abide the result of the instant case.

Glorioso testified that Scinta "asked him to please give him some business and the agent talked and the witness said he had a cousin (nephew) named Scalco, who did not live in the house; he was at Rosewood, and had been sick a long time, and witness said he did not know what kind of sickness he had, and the agent said he would be back the next day, that he wanted to talk to Mr. Pavasa first. That Pavasa is a man from the insurance company; that Scinta came back the next day, and Mr. Pavasa said that kind of insurance he will take a hundred." There is no other evidence as to Mr. Pavasa or

his connection with the company. The result was that Glosioso took a policy on the boy's life and told the agent the father, Santo Scalco, might take one also.

Scinta then went to the parents, both of whom said they did not want any more insurance on the boy, the mother naming two nationally known companies in which he was insured, "and that was enough, and she did not want him insured in any other place." They both testified that the boy was at Rosewood at the time; that he was sick and "got spells," and that the agent said he knew all about that. They yielded to the importunities of the agent, who did some writing, presumably an application. The parents did not know what the agent wrote; they signed nothing, and in a few days he returned with a policy and collected five weeks' premium.

The appellant contends that the contract is unenforceable because the insured was not in "sound health" at the time the policy was issued. This contention is controlled by the extent and scope of the authority of the agent. If the discretion to accept or refuse the policy was in the agent, and the agent knew, when he received the application and delivered the policy, that the insured was not in sound health, and there was no complicity in the fraud upon the company, then the act of the agent was the act of the principal and the latter is bound. "A party dealing with an agent who is acting within the scope of his authority is regarded as dealing with the principal, and all acts so performed by the agent are binding upon his principal." 2 *C. J.* 560; *Hambleton v. Rhind,* 84 Md. 456, 491; *Mechem on Agency* (2nd Ed.), sec. 246.

In the case before us it was, according to the record, testified by a superintendent of the company that "the rule of the defendant is that under the age of thirty-five the agent is permitted to pass on the insurance himself on the statement of the applicant to the amount of $500, but above that the applicant must be examined by a medical doctor." So there can be no question as to the authority of the agent to solicit and accept the business. If he acts dishonestly with his principal and the applicant has been guilty of no misrepresentation or fraud, then it is the principal's misfortune and not the

applicant's fault. In *Globe Reserve Life Ins. Co. v. Duffy,* 76 Md. 293, 300, wherein the facts bear a striking resemblance to those of the present record, this court said: "There are many cases in which, to prevent fraud and gross injustice, an insurance company is estopped, on grounds of the highest public policy, to object that the statements made by its agents beyond the scope of their authority are false. But there must be no complicity on the part of the assured, because if false answers be writen in the application by the agent with the knowledge of the assured, the latter becomes an accomplice, and both perpetrate a fraud upon the company. * * * But the broad principle which precludes one from taking advantage of his own wrong, would equally interpose to prevent the insurer from relying upon the false statements made by his own agent, when the assured has acted in perfect good faith and with due diligence and has made no misrepresentations himself." And in *Hartford Fire Insurance Company v. Kealing,* 86 Md. 130, 146, it is stated that "An insurer with full knowledge of the facts, or chargeable with such knowledge, shall not enter into a contract of insurance, receive the premiums thereon, and then be permitted to set up those facts to evade the liabilities the contract imposes on him." See also *Dulany v. Fidelity & Casualty Co.,* 106 Md. 17; *Great Eastern Casualty Co. v. Schwartz,* 143 Md. 452, 457.

There can be no question that if the applicant had made the same statements to the principal which were made to the agent, and the policy had been issued by it directly to the applicants, the principal would have been liable. How, then, in the face of the broad power of the agent, as testified to by the company's superintendent, can the company escape liability for an act which would have involved it if done by itself? But, says the appellant, the appellees participated in the fraud and they, therefore, cannot enforce the policy. If there was complicity on the part of the assured or the applicant (*Globe Reserve Inc. Co. v. Duffy, supra*), the beneficiaries cannot recover. But was there such complicity? The record shows that the appellees were solicited by the appellant's agent to take the insurance on their boy's life, that they

at first resisted his efforts, then yielded to his importunities and took the insurance to help him (Scinta) out, "so he can hold his job". They frankly told the agent the boy was an inmate of a home for feeble-minded children, and that he "gets spells". The agent made up the application, and, if any one signed it, he did; the father and mother did not; nor did they know what the agent wrote. We do not find in these facts sufficient evidence for this court to say as matter of law that the appellees were guilty of complicity in the fraud perpetrated on the insurance company. The company sent the agent out with authority to solicit and pass on insurances of $500 or less to persons under thirty-five years of age, and it, therefore, behooved the company to take care as to the character of its representatives vested with such arbitrary power as the one in evidence here. The trouble in this case is not with the principles of the law or in its application. It is a principle designed to promote the ends of justice, but it cannot be bent or twisted out of shape to cure the failures and deficiencies of business conduct and management. When an employer sends out an agent clothed with authority as extensive as the principal himself possesses, he vouches for his integrity and honesty, and must accept the consequences of all acts done with those who deal fairly with such agent.

The appellant also contends that, even if the company be estopped from denying liability on account of the epileptic and general mental deficiencies of the insured, it should be excused because there is no evidence that the agent knew of the boy's chronic ear trouble, Dr. Keating testifying, "either of which would have prevented him from being in sound health".

Appellee urges the decision in *Willey v. Mutual Life Ins. Co.*, 133 Md. 665, 666, as authority for the contention. This court there said: "The provision as to the sound health of the insured contained in the policy was a reasonable and enforceable one. No general definition of unsound health in an insured can be given that would be applicable to all

cases, and in many cases that question should be left to the jury under appropriate instructions by the court. The question is analogous to that of the falsity or materiality of representations contained in the application for the policy." Whether it is material to the risk or is one which, standing alone, would have influenced the agent or the company to reject the claim, we can only guess. It was in the record, and the verdict indicates that the jury was not influenced by it. Our impression is that it was of minor importance as compared with the facts disclosed by the beneficiaries to the agent. The record fails to disclose any knowledge of the ear condition on the part of the applicants. The appellant itself proved that, when he entered Rosewood, Sam Scolco had perfect hearing. There can be no denial of the fact that the appellees informed the agent of the unsound health of the insured, without any disposition to conceal anything. To take advantage of the "sound health" provision of the policy, the appellant or its agent must have been deceived or misled by the applicant's representations; and we can find in this record no basis for any such conclusion.

In *Loving v. Mutual Life Ins. Co.,* 140 Md. 173, which the appellant also urges as an authority, the insured had signed an application wherein he answered "no" to the question, "Have you ever been under treatment at any asylum, cure, hospital or sanitarium?" Whereas the proof was that he was afflicted with tuberculosis and had been a patient at the Sabillasville State Sanitarium. The contention was that the agent knew of this and the company was therefore estopped from denying liability on that account. In answer to this contention the opinion by Judge Offutt said: "The declaration of an agent, to be binding upon the principal, must at least have been made during the agency and pending the transactions to which it related. There is nothing in the question referred to in this exception to indicate that the supposed declaration by Peppler was made either pending the transaction or during his agency." So that the bind-

ing elements of agency which were lacking in that case were present in this.

Finding no reversible error in any of the rulings on the evidence, and that the rejected prayers excepted to were properly refused, in our opinion the questions involved should have been submitted to the jury, and the judgment appealed from will be affirmed.

*Judgment affirmed, with costs to the appellees.*