WALSH *v.* EDWARDS ET UX.

[No. 196, September Term, 1963.]

*Decided February 19, 1964.*

The cause was submitted to BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and SYBERT, JJ.

Submitted on brief by *James C. Christopher* for the appellant.

Submitted on brief by *Jackson Brodsky* and *Brodsky & Cuddy* for the appellees.

HORNEY, J., delivered the opinion of the Court.

In this law action for fraud and deceit arising out of an alleged misrepresentation made by a seller to a prospective pur-

chaser of a house and lot with respect to the probability of a creek overflowing during heavy rainstorms, the contentions on appeal are: (i) that the trial court should have granted the motion for a directed verdict because there was insufficient proof of misrepresentation; (ii) that there was no admissible proof of reliance on the misrepresentation; and (iii) that it was error to admit evidence of a representation made subsequent to the date of the contract to purchase.

On December 22, 1959, one of the purchasers (Nathen P. Edwards), accompanied by a real estate saleswoman, went to inspect the property of the sellers (Gerald A. and Grayce K. Walsh), at 8600 Burning Tree Road in Bethesda, and were admitted by Grayce Walsh. Gerald Walsh was not present. In the evening of the same day, Nathen Edwards with his wife (Doris B. Edwards) returned to have another look at the property. On this occasion neither of the sellers was at home. Two days later a contract of sale was executed between the sellers and the purchasers. The contract contained no warranties. On his first visit to the property, Nathen Edwards had seen a shallow creek of about 20 to 30 feet in width in the rear of the property, had inquired as to its depth and what it was likely to do "during a storm," and had received certain assurances. When all of the parties met to close the sale on January 15, 1960, Doris Edwards, because she had small children and was concerned "about living on a creek," asked Grayce Walsh about the water in the creek and again certain assurances were made. The purchasers made final settlement and accepted a deed.

The creek flowed in a westward direction and made an almost right angle bend to flow southward behind the Edwards property and the properties of others. Burning Tree Road, by means of a bridge recently constructed over the creek at a point above the right angle bend, crossed the creek from the north and ran south in front of the above properties. In August of 1960, as had happened at least twice during heavy rainstorms in each of the two previous summers, the creek overflowed its banks at the bridge and flooded in a southerly and southwesterly direction onto the downsloping Burning Tree Road, and across the above properties to reenter the main-

stream of the creek which had turned the bend and was then flowing southward. Most of the water that flowed across the Edwards property—except that which flowed into the garage and the basement and under a door in the recreation room to the terrace in the rear of the house—tended to flow down the swales on both sides of the house until it reached the level of the mainstream. In taking this course, no water (other than that which flowed through the split-level house) ever reached the rear of the house. As a result of the flooding, extensive damage was done to the trees, shrubbery and lawn, to the outside and inside of the house, to the motor vehicles and other machinery in the garage, and to the household equipment, furniture and other goods that were below the level of the garage.

With respect to the alleged misrepresentation, Nathen Edwards testified at the trial that while he was being shown through the house by the saleswoman, he paused in the recreation room which had windows or glass doors that opened onto the terrace in the backyard. From the room he could see the bed of the creek and had inquired whether it was likely to overflow during a heavy downpour of rain. The question, which was directed to the saleswoman, was referred to Grayce Walsh, who was in the foyer but close enough to hear the conversation. According to Nathen Edwards, she replied that the "creek would come up over its banks in heavy rain but it never came near the house." According to the saleswoman, Grayce Walsh answered the question by saying that "the creek did not overflow from the rear of the house." But Grayce Walsh denied that she made a statement concerning the creek on that occasion. Nathen Edwards also testified to the effect that he and his wife would not have purchased the house but for the representation made by Grayce Walsh.

Doris Edwards testified that due to her concern for her children she had asked Grayce Walsh on the day of the settlement "if there was much water in the creek" and that she had said that "ordinarily there was very little—just a few inches" and that "during a storm the creekbed sometimes filled up but that the water level went right down again within an hour or so" and that she did not think we "had anything to worry

about" because the children would not be outside anyway during hard rainstorms.

Gerald Walsh admitted that the creek had flooded the property on four previous occasions in 1958 and 1959, and that he had protested to the county authorities about the matter. He further testified that after the last inundation a curb had been constructed along the front of the property in an effort to keep water from flowing across it.

Grayce Walsh, who was well aware of the damage that had been caused by previous floods, admitted that she had signed her name and that of her husband to a neighborhood petition addressed to the county authorities, dated November 12, 1959, in which, among other things, it was stated that the creek "jumps its banks, flooding homes, inundating large areas of valuable properties, and leaves a trail of destruction, damage, debris and health-menacing mud and silt."

A neighbor testified that when the creek overflowed its banks above the bridge in August of 1960, as it had done on several previous occasions, the water came down Burning Tree Road and, in seeking the level of the water in the creek, had flowed against the Edwardses' house, on both sides of it, and into it through the garage and out a back door of the recreation room. The level of the creek, however, had not risen high enough to inundate the area immediately in the rear of the house.

At the close of the evidence, counsel moved for a directed verdict as to each of the defendants. The motion was reserved as to Gerald Walsh and was denied as to Grayce Walsh.

The jury was fully and fairly instructed as to the law of the case and there were no objections to the charge. The verdict was in favor of the plaintiffs against the defendant Grayce Walsh but was for the defendant Gerald Walsh.

### (i) and (ii)

Since there was sufficient proof of misrepresentation, the refusal of the trial court to direct a verdict in favor of the appellant was proper.

The purchaser testified that when he inquired, prior to signing the contract of purchase, as to the likelihood of the creek overflowing during a storm, the seller replied that "it would come over its banks in heavy rain but it never came near the house." That there had been a discussion concerning the creek was corroborated by the saleswoman. But the seller testified that the purchaser had not mentioned the creek to her and denied that she had made any representation with regard to it. She contends that even if she had made the statement attributed to her by the purchaser, it was not such as to represent that the property as an entirety had never been flooded and damaged.

We think that when the statement attributed to the seller by the purchaser and other parts of the evidence produced at the trial are considered together, there was enough evidence of misrepresentation to justify submission of the case to the jury and, if believed, to warrant finding a verdict for the plaintiffs.

Ordinarily, of course, the seller of real property is not legally obliged to disclose to a prospective purchaser the objectionable or undesirable conditions or features of the property offered for sale, and mere silence or nondisclosure of material facts by the seller would not constitute actionable fraud. But where, as here, the seller, in addition to not disclosing the facts, made an active misstatement of fact, or only a partial or fragmentary statement of fact, which misled the purchaser to his injury, the legal situation of the seller was reversed and there was imposed on her a duty to disclose all that she knew as to the probability of the creek overflowing. See *Fowler v. Benton,* 229 Md. 571, 581, 185 A. 2d 344, 351 (1962) ; *Brager v. Friedenwald,* 128 Md. 8, 97 Atl. 515 (1916). See also *Schnader v. Brooks,* 150 Md. 52, 132 Atl. 381 (1926). Under the circumstances in this case, the failure to disclose the facts constituted actionable fraud.

The appellant further contends that the purchasers failed to prove by admissible evidence that they had relied on the representation made by the seller, but such is not the case. During the course of the examination of Nathen Edwards, he was asked whether he relied on the representation made by the seller, and he replied that he did. When he was asked on the next ques-

tion whether he would have purchased the property if the representation had not been made, there was an objection that it was leading. The objection was overruled and the witness answered that "we would not have purchased the house." The previous similar question having been answered in the affirmative without objection, the answer to the second question, though superfluous, was not prejudicial. *Blinder v. Monaghan,* 171 Md. 77, 188 Atl. 31 (1936) ; *State Roads Commission v. Bare,* 220 Md. 91, 151 A. 2d 154 (1959). In any event, the admissibility of leading questions is a matter which is usually left to the discretion of the trial court. *Bethlehem Steel Co. v. Golombieski,* 231 Md. 124, 188 A. 2d 923 (1963).

In the instant case there was proof that the representation was false, that its falsity was known to the seller, that it was made for the purpose of deceiving the purchasers, that the purchasers relied on the misrepresentation and would not have purchased the property had the misrepresentation not been made, and that the purchasers actually suffered damage as a direct result of the fraudulent misrepresentation. That is all that was required in this case.

(iii)

The final contention of the appellant also lacks merit. When Nathen Edwards was asked on direct examination whether there had been any conversation between the parties at the time of settlement with regard to the creek, there was an objection but the court allowed the question to be answered on the theory that what was said on that occasion might be a continuing representation. Even if it is assumed, without deciding, that the witness should not have been permitted to testify that Grayce Walsh had said to Doris Edwards that "the creek rose up and filled its banks but went right down again," the record shows that testimony to the same effect was admitted without objection when Doris Edwards was called as a witness. Under these circumstances, the ruling of the trial court, even if it was erroneous, does not present a reversible error in this case, for another witness subsequently testified to the same fact without objection. At most the error was harmless. *State Roads Com-*

*mission v. Bare, supra; Eureka-Maryland Assurance Corp. v. Scalco,* 158 Md. 73, 148 Atl. 267 (1930). Cf. *Gouker v. State,* 224 Md. 524, 168 A. 2d 521 (1961).

The judgment will be affirmed.

*Judgment affirmed; appellant to pay the costs.*