236 Md. 45 (1964)
202 A.2d 331
WALKER, ET UX.
v.
BOARD OF COUNTY COMMISSIONERS OF ANNE ARUNDEL COUNTY
[No. 74, September Term, 1964 (Adv.).]
Court of Appeals of Maryland.
Decided June 16, 1964.
Opinion filed July 17, 1964.
The cause was argued before BRUNE, C.J., and HENDERSON, HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.
Nicholas J. Fotos for the appellants.
Richard N. Hambleton, with whom were Henry J. Tarantino and Joseph W. Hoy on the brief, for the appellee.
Decided, per curiam, June 16, 1964.
HENDERSON, J., delivered the opinion of the Court.
The appellee filed a bill for specific performance of an alleged *47 contract by the appellants to sell their house and lot at 44 Calvert Street in Annapolis. A decree pro confesso was entered, but subsequently set aside. A demurrer was overruled. Finally, after a hearing on the merits, the Chancellor granted the relief prayed. An appeal was entered and the case was advanced for hearing. In a per curiam order, we reversed. We now state the reasons for that action.
In May, 1963, T. Carroll Worthington, an experienced realtor, was authorized by the County Commissioners of Anne Arundel County to negotiate for the purchase of certain properties on Calvert Street including the Walkers' property. He called on the Walkers and told them the County wanted their property for a proposed extension of the County Jail, located nearby. Mrs. Walker operated a beauty shop in the building, owned by her and her husband, and was unwilling to sell. On June 25, 1963, Worthington and his son called on the Walkers and told them that the County would condemn if they did not negotiate a sale, and urged them to name a figure. Mr. Worthington, Senior, stated that the County might pay as much as $19,500. He handed them a typewritten letter under his letterhead, reading as follows:
"We hereby agree to sell our property known as No. 44 Calvert Street, Annapolis, Maryland, to the County Commissioners of Anne Arundel County, Maryland, at and for the price of ______________" Walker filled in the figure of $25,000, and the Walkers signed it.
Mr. Worthington admitted telling the Walkers that two property owners in the past had received less than they asked when they refused to sell and their properties were condemned. Both the Worthingtons admitted they told the Walkers that if they didn't sell, the County "would condemn." The only difference between the Worthingtons' version of what transpired, and that of the Walkers, is that the former testified they told the Walkers the County would condemn for an office building or parking lot, the latter testified they were told it would be for a jail site.
The appellants first contend that there was no enforceable contract of sale. It is admitted that the County Solicitor wrote the Walkers on July 10, 1963, stating that the Commissioners "accepted your offer," and expressing the opinion that the offer *48 and acceptance "spells out a mutual and binding contract of sale which may be enforced in court." The letter also stated: "Mr. Worthington will now present you with a formal contract of sale for you to sign which spells out such details as settlement date, etc." The Walkers refused to sign the "formal contract" when presented, and refused to sign another contract presented by a Mr. Hynson, who had been retained for the purpose by Mr. Worthington. The County Solicitor informed the Commissioners on September 26, 1963, when purchases of other properties were "finally ratified and approved," that the Walker property "is not under contract." The appellants contend that the letter they signed was no more than a tentative offer, and the County's "formal contract" was a counter-offer, since it fixed the time for settlement at 120 days, and made time of the essence. The appellee contends that the formal contract was sufficiently definite and added nothing to what was implicit in the prior acceptance, and that it was understood that the formal contract was to be only "evidence" of a completed agreement. See McGinn v. Amer. Bank Sta. Co., 233 Md. 130, 133, Eastover Stores Inc. v. Minnix, 219 Md. 658, 666, Post v. Gillespie, 219 Md. 378, 386, and Peoples Drug Stores v. Fenton, 191 Md. 489, 493. See also Binder v. Benson, 225 Md. 456, 462.
If we assume without deciding that the appellee is correct and that the exchange of letters created an enforceable contract, we think the evidence sustains the appellants' second contention that there was a misrepresentation sufficiently material to make the contract voidable. The cases make it clear that a material misrepresentation, even though innocently made, may be a defense to specific performance. Glendale v. Crawford, 207 Md. 148, 157 et seq., and cases cited; Carozza v. Peacock Land Corp., 231 Md. 112, 121. Cf. Walsh v. Edwards, 233 Md. 552, 557, and Whitney v. Halibut, Inc., et al., 235 Md. 517. The appellee does not dispute the general proposition, but argues that the appellants were not misled.
The appellants testified that they would not have put a price on their property if they had not believed the statements of the Worthingtons that the County would and could condemn. There is no testimony to the contrary, although the appellee argues that the appellants "knew for well over a year before appellee's *49 agent negotiated with them that appellee planned to acquire theirs and adjoining properties to expand the County Jail." It is quite true that the County had such a plan, and had employed Mr. Worthington to implement it by purchase. But there is no evidence that it had condemned any property, that it had taken any steps to do so, or even that it had any power to do so.
It seems clear that the County possesses no power of condemnation under the Public General Law. Code (1957), Art. 25, sec. 3, authorizes certain counties to acquire real property by purchase or condemnation, but Anne Arundel County is specifically excluded. Cf. Barnett v. Charles Co., 206 Md. 478, 483. By Chapter 790, Acts of 1959, sec. 1A, the County was authorized to borrow and expend up to $1,000,000 for "the construction, reconstruction or improvement of public buildings or any structure to house any functions of the County government or administration, jails, police stations, or any combination of the foregoing * * *." (Italics supplied) It was further provided that before borrowing any money the County Commissioners "shall adopt a resolution describing the projects described in Section 1 hereof for which said borrowing or indebtedness is intended * * *." The appellee contends that this Act conferred authority to purchase, but does not contend that it conferred the power to condemn.
By Chapter 792, Acts of 1963, effective June 1, 1963, the County was authorized to acquire all or part of a specified tract of land in Annapolis by purchase or condemnation. The area described in section 2, by metes and bounds apparently included the property of the Walkers. As originally introduced the Act authorized the County to acquire title to such lands in order to improve and expand its "jail facilities." But these words were deleted from the title and from section 1, and by amendment the following words were substituted: "public county office buildings and parking facilities." Section 2 was also amended by striking out the word "all" before the description by metes and bounds, and substituting the words: "all of that land presently occupied by the county jail and in addition thereto, all" or any part of the lands described.
We need not now decide whether the effect of these amendments was to wholly eliminate the proposed grant of power to *50 condemn the tract described for any expansion of "jail facilities." It may well be that the deletion of the reference to jail facilities in the title would prevail over the equivocal reference to the existing jail in section 2. In any event, we think the representations made by Mr. Worthington on behalf of the County, were misleading. It seems clear from the record that the property in question was to be purchased for a "jail site." That expression is found in the minutes of the Commissioners dated July 2, 1963, July 23, 1963 and August 6, 1963. At the meeting on July 23, one of the Commissioners explained his negative vote by stating that there was "rising opposition throughout the county to this location as a jail site." The first suggestion of a change in purpose is found in the minutes of September 26, when the County Solicitor "advised that because of the case pending in court to restrain the county from using the property on Calvert Street for a jail, he would prefer that the Board take the position that the properties would not be used for jail purposes only." One of the Commissioners remarked that he did not know what "other county uses" would be. On October 1, 1963, the Solicitor said: "In the light of the pending case, it was recommended * * * to amend the word `jail uses' to `county uses'."
The Worthingtons were aware of the possible difficulties due to the amendments of Chapter 792 of the Acts of 1963. Mr. Worthington, Junior, testified that they "made it perfectly clear [to the Walkers] that though the property could be condemned, it could not be condemned for the actual jail site, but could be condemned for public use or for parking lot or whatever." But they did not tell the Walkers that the County's power to condemn for any improvement or enlargement of the jail at the existing site had been challenged in court, and that no actual steps had been taken by the County to condemn any property for any purpose whatever. Under the circumstances, we think the representation that the County "would condemn" amounted to more than a mere expression of opinion as to what might happen in the future, and amounted to a representation, contrary to fact, upon which the Walkers were entitled to rely. See Restatement, Contracts, §§ 474, 497. Cf. Sainsbury v. Pennsylvania Greyhound Lines, 183 F.2d 548 (C.A.4th).