CROSSE *v.* CALLIS

[No. 27, September Term, 1971.]

*Decided October 13, 1971.*

66

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Charles E. Hearne, Jr.*, with whom were *Hearne, Fox & Bailey, Stanley G. Robins* and *Robins & Robins* on the brief, for appellant.

*Richard M. Pollitt* for appellee.

SMITH, J., delivered the opinion of the Court.

This case is an outgrowth of our changing pattern of living which produced the sale of the Wicomico Hotel, a landmark of the Delmarva Peninsula adjacent to the Court House Square in Salisbury, for conversion into an office building. Appellant Francis E. Crosse, Jr., (broker) a real estate broker, sued P. George Callis (defendant) for commissions of 5% on the sale price of $400,000 which he believed to be due him. We shall here affirm judgment for defendant for costs entered after trial before the court.

In March, 1968, defendant went to see broker and asked him to ascertain whether the Wicomico Hotel property was for sale. He apparently represented or was associated with two individuals in Delaware. In response to the question as to whether he told broker whom he was representing, defendant said:

> "I told him that there was people in Delaware with me but I wanted his confidence in the matter as far as my association with the project. No names were to be divulged at that particular time."

He then went on to say:

> "I don't know if I identified them that particular day or when I came back to ask him to pursue it."

Broker advised defendant that his commission would be 5% of the selling price.

There were negotiations back and forth. Ultimately, the corporation which owned the hotel agreed to sell for $400,000, a figure that was acceptable to defendant and his associates. Broker then employed a local attorney to prepare the first draft of an option. It was prepared in the name of "The ABC Corporation" which, as broker put it, was a "fictitious" name. An option contract between Wicomico Enterprises, Inc., and The Eastern

Shore Development Corp., a Delaware corporation, was ultimately signed. Four thousand dollars was paid by the latter corporation for the option. The option was not exercised.

Precisely when the intent to form a corporation was made known does not clearly appear. Defendant testified that broker was aware "all along" of the intent to form a corporation and that he was advised of the name of the corporation as soon as it was formed. In response to a question on cross-examination as to when he found out that a corporation was to be formed, broker said:

> "Well, this would be done, of course, after we found out even if the property could be purchased."

At another point in the cross-examination of broker the following appears:

> "Q. Well, why did you have the option drawn to a corporation?
> "A. It may possibly have been that Mr. Callis might have told me that there would be one formed if these negotiations would be taken care of for the purpose—
> "Q. When would he have told you that?
> "A. Some time during our numerous meetings."

Defendant was not a stockholder of the corporation, although his wife was. The hotel was subsequently acquired for $400,000 by defendant and certain other individuals in no way connected with the persons originally associated with defendant. That contract was a vastly different contract which instead of an outright sale of the hotel property had defendant's group acquiring stock in the hotel corporation and the hotel corporation then proceeding to retire the stock held by prior owners. There also were differences in the financing.

The suit of broker contained three counts, the first two

being the common counts of "[f]or work done and service rendered by the Plaintiff for the Defendant at his request" and "[f]or money found to be due from the Defendant to the Plaintiff on accounts stated between them." [1] The third count alleged the employment of broker by defendant to obtain an option to purchase the Wicomico Hotel, an agreed commission of 5% of the purchase price, that broker obtained for defendant the benefit of a valid and enforceable option to purchase said property at a price of $400,000, that under the rate agreed upon there was due from defendant to broker the sum of $20,000 which had not been paid, and that although demand had been made for payment defendant had refused to pay.

There was no dispute as to the amount of the commission. There was dispute as to when the commission was to be paid. The trial judge said on this subject in his opinion:

> "Callis says it was his understanding that no commission was payable unless and until a sale was consummated by the exercising of the option. There is testimony from other real estate brokers that this is in accord with the custom in the real estate business in this area. Crosse, however, says his commission was payable when he secured the option signed by the seller on terms agreeable to the buyer. He acknowledges that this was never discussed with or agreed to by Callis, but relies on Section 17 of Article 2 of the Maryland Code to support his position."

---

1. The two common counts were not preceded with the words "for money payable by the defendant to the plaintiff" nor did these words appear in the declaration ahead of the first count. See Code (1969 Repl. Vol.) Art. 75, § 14; form 4 in the appendix of forms of the Maryland Rules; and 1 *Poe, Pleading and Practice* § 94 (5th ed. Tiffany 1925). See also § 128 of 1 *Poe* relative to the inapplicability of the common count upon an account stated to a claim such as this.

Code (1957) Art. 2, § 17 provides as follows:

"Whenever, in the absence of special agreement to the contrary, a real estate broker employed to * * * buy * * * or otherwise negotiate real or leasehold estates * * * procures in good faith a * * * seller * * * and the person so procured is accepted as such by the employer, and enters into a valid, binding and enforceable written contract of sale * * * in terms acceptable to the employer, and such contract is accepted by the employer and signed by him, the broker shall be deemed to have earned the customary or agreed commission, as the case may be, whether or not the contract entered into be actually into [in] effect * * *."

The trial judge said:

"The Court has no difficulty in finding the absence of a special agreement since there was clearly no agreement or meeting of the minds as to when the commissions were payable. It is equally clear that Plaintiff procured a valid agreement enforceable against the seller, an option in terms acceptable to The Eastern Shore Development Corporation and signed by it. Whether Crosse was employed by Callis or by The Eastern Shore Development Corporation is primarily a question of fact and the burden of proving his employment is on the broker. *Weinberg v. Desser*, 243 Md. 347, 221 A. 2d 66. After careful consideration of all the evidence, the Court feels that Mr. Crosse has failed to meet the burden that he was employed by Mr. Callis individually."

We consider this case under Maryland Rule 886 providing that when an action is tried by a lower court without a jury the judgment of the lower court will not be set aside on the evidence unless clearly erroneous,

with due regard being given to the opportunity of the lower court to judge the credibility of the witnesses. If there is substantial evidence to support the trial court's factual conclusions, those findings must be reviewed in the light most favorable to the party prevailing below. *Simmons v. B. & E. Landscaping Co.,* 256 Md. 13, 17, 259 A. 2d 314 (1969).

The trial judge was not clearly in error in finding that there was no meeting of the minds between broker and defendant as to when commissions might be payable. The burden of proof rested upon broker, the plaintiff. Broker seeks to come in under the statute. It is obvious that the contract here was not signed by defendant. *Brown v. Hogan,* 138 Md. 257, 113 A. 756 (1921), is authority for the fact that under the statute the contract must be accepted and signed by the employer. There was evidence to sustain the conclusion of the trial judge that the actual employer was The Eastern Shore Development Corp.

The trial judge's statement, "It is fundamental that an agent of a corporation is generally not personally liable for contracts made on behalf of the corporation." is a correct one. *Restatement (Second) of Agency* § 4 (1958), discusses the situation where at the time the contract was made it was known by the third party such as the broker here that the corporation had not yet come into existence. Although a corporation may be liable for contracts made by promoters and adopted by the corporation as in *Isle of Thye Land Co. v. Whisman,* 262 Md. 682, 279 A. 2d 484 (1971), the promoter may remain individually liable for such contracts in the absence of an agreement that he is to be relieved of such responsibility. 1 *Fletcher, Cyclopedia Corporations* § 216 (1963 Rev. Vol.).

Liability may not be placed upon defendant here under the promoter doctrine since he does not fit the definition of promoter. In § 189 of 1 *Fletcher* it is stated, citing *Old Dominion Copper Mining & Smelting Co. v. Bige-*

*low,* 203 Mass. 159, 177, 89 N. E. 193, 40 L.R.A. (n.s.) 314 (1909) :

> "In a leading American case it is said that 'the word "promoter" has no precise and inflexible meaning in this country,' which seems to be true in England as well; but it is also said that 'in a comprehensive sense "promoter" includes those who undertake to form a corporation and to procure for it the rights, instrumentalities and capital by which it is to carry out the purposes set forth in its charter, and to establish it as fully able to do its business.' "

See also definitions of the term appearing in 34 *Words and Phrases, "Promoter",* at 558-562 (1957).

Broker seeks to hold defendant under the statute by claiming that defendant was acting for an undisclosed principal and, therefore, under the holdings in *Hospelhorn v. Poe,* 174 Md. 242, 257, 198 A. 582 (1938), and *Codd Company v. Parker,* 97 Md. 319, 325, 55 A. 623 (1903), that defendant is responsible for the commissions.

The real situation here seems to be that defendant was acting for partially disclosed principals, the individuals who ultimately formed The Eastern Shore Development Corp. The difference between the terms "undisclosed principal" and "partially disclosed principal" becomes readily apparent when one examines *Restatement (Second) of Agency* § 4 (1958), which states in part:

> "(2) If the other party has notice that the agent is or may be acting for a principal but has no notice of the principal's identity, the principal for whom the agent is acting is a partially disclosed principal.
>
> "(3) If the other party has no notice that the agent is acting for a principal, the one for whom he acts is an undisclosed principal."

Illustration 6 gives the example:

> "A offers to sell a horse to T, and in reply to T's question concerning the identity of the owner for whom he is acting, A states that he is unable to give his name. The principal is partially disclosed."

See also 2 *Williston on Contracts* §§ 283 and 285 (3rd ed. Jaeger 1959) ; *Wheaton Lumber Co. v. Metz,* 229 Md. 78, 83, 181 A. 2d 666 (1962) ; and 3 Am. Jur.2d *Agency* § 307 (1962).

Whether one speaks of an agent for an undisclosed principal or of an agent for a partially disclosed principal, if an agent wishes to avoid liability he must seasonably disclose the identity of his principal. In this instance, the partially disclosed principals who were organizers of the corporation were actually supplanted by the corporation.

If an agent is commissioned to sell real estate and produces a buyer ready, willing, and able to buy as in *Aler v. Plowman,* 190 Md. 631, 59 A. 2d 196 (1948), he may be entitled to his commissions on the sale, notwithstanding the fact that the property owner failed to enter into a contract with that potential buyer. Where, however, he is representing a buyer, as he was here, he could not earn his commissions until there was a contract actually signed by the seller, binding the seller to sell, because the seller would have the right up until the contract was executed to decide not to sell. The ultimate principal was here disclosed, therefore, before any liability attached since The Eastern Shore Development Corp. was the party which actually contracted with the hotel owner.

Judge Travers in his opinion said:

> "A disclosure of the fact of Agency and the identity of the principal made before or at the time the contract is entered into or before liabilities are incurred is sufficient to relieve the

agent from personal responsibility. 3 *C.J.S. Agency,* Section 216 (b). No liabilities are incurred under the statute until the option agreement was signed. Prior to the time of the signing of the agreement, Mr. Crosse knew there was a corporate purchaser even though he may not have been aware of the correct corporate name, but a disclosure of the principal's name is not indispensable if his identity is otherwise established. 3 *C.J.S. Agency,* Section 216 (c). Whether the corporation was known to him as the ABC Corporation or The Eastern Shore Development Corporation during the time when he was conducting his negotiations had no material bearing. He knew that it was a corporate entity organized by a group of men of whom Callis was only one."

He might also have cited 3 *Am. Jur. 2d Agency* § 317 (1962) ; *Brackenridge v. Claridge,* 91 Tex. 527, 44 S. W. 819, 43 L.R.A. 593 (1898) ; *Potter v. Chaney,* 290 S.W.2d 44 (Ky. 1956), and 1 *Mechem on Agency* § 1414 (2nd ed. 1914). In the latter work it is said:

"The liability is to be determined by the conditions known at the time the contract was made or other transaction had. If at that time the principal was not disclosed, his subsequent disclosure will not relieve the agent.

"A disclosure, however, is sufficient within this rule if, though not made at the time negotiations were begun, it is full and complete before any contract is made or obligation incurred. And, though not made until after one contract has been entered into, the disclosure would be operative as to further contracts if fully made before such new contracts are consummated.

"As has already been pointed out, a usage that the agent shall be personally liable if he does not disclose his principal within a reason-

able time, even though the agent would not by reason of its terms be primarily liable upon the contract, is good."

We here hold disclosure made by defendant of the identity of his principal prior to the incurrence of any obligation sufficient to relieve him of any legal responsibility under the undisclosed principal or partially disclosed principal doctrine.

Broker seeks yet another way out by suggesting that he was the procuring cause of the ultimate sale and therefore he should prevail. The case was not tried upon that basis. Moreover, as the trial judge pointed out, to so collect, broker would be obliged to establish both that defendant was the employer and that broker was the procuring cause of this sale. The trial judge had already concluded that the employer was The Eastern Shore Development Corp., a conclusion that under the evidence was not clearly erroneous. Therefore, broker cannot collect on that theory.

*Judgment affirmed; appellant to pay the costs.*