672 A.2d 667

Cecil F. HILL, Sr.

v.

COUNTY CONCRETE COMPANY, INC.

No. 975, Sept. Term, 1995.

Court of Special Appeals of Maryland.

March 4, 1996.

Richard H. Keller, Baltimore, for Appellant.

John A. Goodman, Bel Air, for Appellee.

Argued before WILNER, C.J., and HARRELL and EYLER, JJ.

EYLER, Judge.

This case is before us on appeal from a judgment entered in the Circuit Court for Harford County in favor of County Concrete Company, Inc. against Cecil F. Hill, Sr. The issue is whether Hill should be afforded limited liability status as an officer/stockholder of a corporation because the corporation existed *de facto* if not *de jure* or because County Concrete was estopped to assert individual liability where there has been a valid finding that Hill did not act in good faith. We find no error and affirm the judgment.

**I.**

County Concrete filed a complaint and motion for summary judgment against "C & M Builders, Inc." on June 6, 1991. The suit sought payment due on an open account. Soon thereafter, County Concrete filed a request to strike service of process, asserting that the "C & M Builders, Inc." served was not the entity with whom it had done business. It then served process on Hill as the correct agent to receive process for "C

& M Builders, Inc." On September 25, 1991, County Concrete filed an amended complaint and motion for summary judgment against "C & M Builders, Inc.," Hill, and Michael Newman. Hill filed an answer to the complaint and a response to the motion for summary judgment. A judgment by default was entered against Newman on July 1, 1992, and summary judgment was granted against "C & M Builders, Inc." on January 1, 1992. County Concrete filed a second amended complaint on November 16, 1992. The second amended complaint contained three counts: breach of contract; breach of statutory trust pursuant to Real Property Art. 9–201; and breach of a construction contract pursuant to Real Property Art. 9–301 and 302. The case was tried without a jury before Judge Stephen M. Waldron on May 10, 1995. Hill's motion for judgment was granted at the conclusion of the plaintiff's case with respect to the two counts based on alleged violations of statutes. Judgment was entered in favor of County Concrete and against Hill with respect to the breach of contract count. County Concrete asserts that Hill never validly incorporated "C & M Builders, Inc." and, thus, is liable in contract to County Concrete. Hill asserts that County Concrete knew it was dealing with a corporation and the corporation existed *de facto* or, alternatively, County Concrete is estopped from pursuing Hill individually. The trial judge declined to apply Hill's theories, based on a finding that Hill had not acted in good faith.

## II.

In 1988, Hill and Newman decided to start their own construction business, specializing in the pouring of concrete walls and foundations. In the latter part of that year, Hill and Newman sought the assistance of an attorney to form a corporation to be known as "C & M Builders, Inc." They were told by the attorney that the corporate name was available and that they could proceed with their business preparations. Hill and Newman ordered checks, painted trucks, and ordered letterhead, all imprinted or painted with the name "C & M Builders, Inc." A bank account was opened

in the National Bank of Rising Sun in the name of "C & M Builders, Inc." on November 10, 1988. For reasons not reflected in the record, the attorney for Hill and Newman did not attempt to file the Articles of Incorporation until the end of February, 1989. At that time, Hill and Newman were informed by the attorney that the name, "C & M Builders, Inc.," had been previously registered with the State Department of Assessments & Taxation and was already being used; thus, it was no longer available to them. Hill and Newman decided to incorporate under another name, "H & N Construction, Inc."

The Articles of Incorporation of "H & N Construction, Inc." were dated May 3, 1989, and were filed with the State Department of Assessments & Taxation on May 4, 1989. An account was opened with National Bank of Rising Sun in the name of "H & N Construction, Inc." on July 31, 1989. H & N Construction, Inc. filed an application for a construction license and indicated in the application that it was trading as "C & M Builders." An organizational meeting occurred, shares of stock were issued, and tax returns were filed. In short, "H & N Construction, Inc." complied with all the prerequisites and was a *de jure* corporation. The record reflects that "H & N Construction, Inc." entered into a security agreement with National Bank of Rising Sun on January 7, 1991, establishing a lien on certain of its assets. The record also reflects that the charter of "H & N Construction, Inc." was forfeited on October 5, 1992.

In February, 1989, County Concrete received an order in the name of "C & M Builders, Inc." for a specified amount of concrete. A principal of County Concrete testified that he had no knowledge of that entity and went to the job site identified in the order. He learned that Hill and Newman were involved with that corporation, and because he knew Hill by reputation, he agreed to establish an account in the name of "C & M Builders, Inc." The first payment was made to County Concrete by check dated February 10, 1989, bearing the name, "C & M Builders, Inc." Subsequently, payments were made by various checks bearing the same name. There were letters

directed to County Concrete on stationery bearing the letterhead, "C & M Builders, Inc." The first delivery of concrete occurred on February 11, 1989. There were several deliveries thereafter, the last occurring on May 8, 1991. It is uncontroverted that County Concrete thought it was dealing with a corporate entity. It did not request a credit application from anyone, nor did it request a personal guaranty from either Hill or Newman. It extended credit based on the reputation of Hill, having been told that he was involved in the corporation.

Between February, 1989, and May, 1991, over $200,000 worth of product was purchased and paid for by "C & M Builders, Inc." The suit by County Concrete, which is the subject of this litigation, was for the balance due, in the amount of $55,231.77.[1] It is uncontroverted that County Concrete was never advised of Hill and Newman's inability to incorporate as "C & M Builders, Inc.," nor was it advised of the incorporation of "H & N Construction, Inc." County Concrete learned that "C & M Builders, Inc." was an entity unrelated to Hill and Newman when it filed its complaint herein and served process on its resident agent. County Concrete did not learn that Hill and Newman had validly incorporated as "H & N Construction, Inc." until January, 1994, when this information was disclosed in a deposition of Hill. Hill explained that he and Newman continued to use the name, "C & M Builders, Inc." subsequent to February, 1989, because of "economic considerations," referring to the cost of obtaining new paper supplies and the repainting of vehicles.

## III.

Hill phrases the questions to this court as follows:

Did the Circuit Court err in granting judgment against appellant?

Did the Circuit Court err in not applying the legal argument of corporate estoppel?

---

1. Judgment was entered in the amount of $95,107.61, the principal balance due plus interest.

Did the Circuit Court fail to recognize a *de facto* corporation and *de jure* corporation?

## IV.

Hill argues that he should not be personally liable because "C & M Builders, Inc." was a *"de facto* corporation." He bases this assertion on the fact that County Concrete knew it was dealing with a corporate entity and not with an individual or individuals. He asserts that the use of a wrong name was not material in that a contract entered into by a corporation under an assumed name may be enforced by either of the parties. For the same reasons, Hill argues that the doctrine of corporate estoppel should apply even if a *de facto* corporation is found not to exist. Hill relies heavily on *Cranson v. International Business Machines Corp.,* 234 Md. 477, 200 A.2d 33 (1974), to support his argument. County Concrete asserts that the holding in *Cranson* is inapplicable to the facts of this case because of the absence of good faith by Hill. There is no assertion herein by either party that there was a contract between County Concrete and the *de jure* corporation, "C & M Builders, Inc." It is undisputed that Hill and Newman were not involved with that entity. The question is whether Hill has a defense to the contract claim filed against him.

We begin with a review of basic principles of contract law. If an agent fully discloses the fact that he is an agent and fully discloses the identity of his principal, the agent is not liable on the contract, and the principal is liable on the contract. Conversely, if an agent does not make such disclosures, the agent is liable on the contract. In this case, it is uncontroverted that Hill did not disclose the identity of "H & N Construction, Inc." as a principal. If we regard that failure under the facts of this case as one of complete lack of disclosure or, alternatively, as either a partial disclosure or an inaccurate disclosure, the result is the same. *See Curtis G. Testerman Company v. Buck,* 340 Md. 569, 575–78, 580, 667

A.2d 649 (1985), and *Crosse v. Callis,* 263 Md. 65, 282 A.2d 86 (1971).

In *Crosse,* the Court had before it a suit by a real estate broker against a party for commissions allegedly due for procuring the sale of certain property. Specifically, the question was whether the broker was employed by an agent for a disclosed principal. The Court stated:

Broker seeks to hold defendant under the statute by claiming that defendant was acting for an undisclosed principal and, therefore, under the holdings in *Hospelhorn v. Poe,* 174 Md. 242, 257, 198 A. 582 (1938), and *Codd Company v. Parker,* 97 Md. 319, 325, 55 A. 623 (1903), that defendant is responsible for the commissions.

The real situation here seems to be that defendant was acting for partially disclosed principals, the individuals who ultimately formed The Eastern Shore Development Corp. The difference between the terms 'undisclosed principal' and 'partially disclosed principal' becomes readily apparent when one examines *Restatement (Second) of Agency* § 4 (1958), which states in part:

"(2) If the other party has notice that the agent is or may be acting for a principal but has no notice of the principal's identity, the principal for whom the agent is acting is a partially disclosed principal.

(3) If the other party has no notice that the agent is acting for a principal, the one for whom he acts is an undisclosed principal."

Illustration 6 gives the example:

"A offers to sell a horse to T, and in reply to T's question concerning the identity of the owner for whom he is acting, A states that he is unable to give his name. The principal is partially disclosed."

See also 2 *Williston on Contracts* §§ 283 and 285 (3rd ed. Jaeger 1959); *Wheaton Lumber Co. v. Metz,* 229 Md. 78, 83, 181 A.2d 666 (1962); and 3 Am.Jur.2d *Agency* § 307 (1962).

Whether one speaks of an agent for an undisclosed principal or of an agent for a partially disclosed principal, if an

agent wishes to avoid liability he must seasonably disclose the identity of his principal. In this instance, the partially disclosed principals who were organizers of the corporation were actually supplanted by the corporation.

263 Md. at 72–73, 282 A.2d 86.

The Court, at pages 74–75, 282 A.2d 86, also cited:

3 Am.Jur.2d *Agency* § 317 (1962); *Brackenridge v. Claridge,* 91 Tex. 527, 44 S.W. 819, 43 L.R.A. 593 (1898); *Potter v. Chaney,* 290 S.W.2d 44 (Ky.1956), and 1 *Mechem on Agency* § 1414 (2nd ed. 1914). In the latter work it is said:

> The liability is to be determined by the conditions known at the time the contract was made or other transaction had. If at that time the principal was not disclosed, his subsequent disclosure will not relieve the agent.
>
> A disclosure, however, is sufficient within this rule if, though not made at the time negotiations were begun, it is full and complete before any contract is made or obligation incurred. And, though not made until after one contract has been entered into, the disclosure would be operative as to further contracts if fully made before such new contracts are consummated.
>
> As has already been pointed out, a usage that the agent shall be personally liable if he does not disclose his principal within a reasonable time, even though the agent would not by reason of its terms be primarily liable upon the contract, is good.

*Id.* at 72–73, 282 A.2d 86.

The Court of Appeals, in *Curtis G. Testerman Company,* recognized these general principles but applied a generally recognized exception, *i.e.,* that a mere misnomer of a principal (whether or not a corporate entity) does not give rise to personal liability by the agent. *Curtis G. Testerman Company,* 340 Md. at 575, 667 A.2d 649. In that case, the argument was made that, since the contract involved was executed in the name of "Curtis G. Testerman, Inc.," instead of "Curtis G. Testerman Company" (the actual corporate name), Testerman,

as a stockholder and officer, entered into the contract on behalf of an unincorporated entity and was, therefore, personally liable. *Id.* at 575, 667 A.2d 649. The Court held that the use of "Inc." instead of "Company" was a misnomer and, therefore, the company was the valid party to the contract. *Id.* at 575–578, 667 A.2d 649. The Court also observed that the record disclosed no allegations that the other parties thought they were contracting with Testerman in his individual capacity. The Court stated:

> Thus, we conclude the Bucks knew that they were dealing with a *specific corporation.*
>
> We cannot allow the Bucks to use a simple misnomer in the corporate name to hold Testerman personally liable. We believe that '[a] mistake in setting out the name of a corporation in an instrument is not fatal where the identity of the corporation is apparent.' 7 William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 3013, at 149 (perm. ed. rev. vol. 1988). *See In re Goldville Mfg. Co.,* 118 F. 892, 896 (1902) ("If the contract is expressed in writing and the identity of the corporation can be ascertained from the instrument itself, the misnomer is wholly unimportant."), *aff'd, William Firth Co. v. South Carolina Loan & Trust Co.,* 122 F. 569 (4th Cir.1903); *Seaboard Commercial Corp. v. Leventhal,* 120 Conn. 52, 178 A. 922 (1935) ("[I]n case of a misnomer of a corporation in a . . . written contract if there is enough expressed to show that there is such an artificial being and to distinguish it from all others, the corporation is sufficiently named . . . ."). *Cf. Dart Drug Corp. v. Hechinger Co.,* 272 Md. 15, 28, 320 A.2d 266, 274 (1974) (assumed that the use of the name Dart Drug, Inc. instead of the actual corporate name, Dart Drug Corporation, on complaint was a "misnomer" and not fatal to plaintiff's case). Clearly, the identity of the corporation, Curtis G. Testerman Company, could be ascertained from the face of the contract and was apparent to the Bucks.

*Curtis G. Testerman,* 340 Md. at 575–76, 667 A.2d 649.

The case before us falls within the general rule and not within the exception. In the cases involving a mere misnomer,

the parties proceeded in good faith with knowledge of the identity of the intended principal. Hill is liable, therefore, absent a valid defense.

The trial judge explained the basis for rejecting Hill's defenses as follows:

[Appellee was] misled as to with whom they were dealing. [Appellant] starts out okay, ... lawyer says, okay, now you are a corporation, go off, they go order their different signs and letterheads and checks, et cetera, and at that point in time the actions that they took were certainly understandable and in good faith, and I have no problem.

The problem results that after the [appellant] knows that he cannot operate as C & M Builders, Inc. he continues to trade as an entity that in actuality is someone else.

[Appellant] finds out that not only is he not incorporated as C & M Builders, Inc., but he finds that he can't be incorporated as that company, and yet he continues to operate under that name and under the designation of an incorporation for years when it could have and should have easily been corrected, and so we have an issue here, and one of the keys to the case is the issue of good faith.

Now he then goes out and properly incorporates under a new name, but he does not let on to this particular creditor until over, well over two years into this very litigation for who the actual corporation is.

The [appellant] argues that this is just a trading as situation.

However, the Court questions the legal authority to trade as an incorporation when that is someone else's corporate name.

[The] initial good faith is lost to the continued action of [appellant] and his partner misleading the [appellee] by using a corporate name that he knows he could not use.

In *Cranson*, 234 Md. at 480, 200 A.2d 33, the Court set forth the elements necessary to find a *de facto* corporation: (1) a law authorizing corporations; (2) a good faith effort to incorporate; and (3) the use or exercise of corporate powers. The

Court raised the question, without deciding it, as to whether the doctrine of *de facto* corporations is still recognized in Maryland. Regardless of whether it may be recognized in Maryland under certain circumstances, we believe there is a serious question as to whether it could or should be recognized in a situation other than when the individuals in good faith believe they have done everything necessary validly to incorporate without having realized that there was some omission that prevented valid incorporation. This was the situation in *Cranson* and distinguishes it from the facts before us.

The Court in *Cranson* did recognize the doctrine of corporate estoppel and distinguished it from the doctrine of *de facto* corporations. The Court stated that, if the elements necessary to find a *de facto* corporation are satisfied, the entity is a corporation against all but the State. *Cranson*, 234 Md. at 487, 200 A.2d 33. The doctrine of corporate estoppel applies to the facts of each case and, if it applies, a party is estopped from setting up a claim of lack of incorporation based on the parties' conduct. *Id.* at 487–489, 200 A.2d 33.

As was true for the Court in *Cranson*, we do not have to decide whether the doctrine of *de facto* incorporation is a part of the law of Maryland because, under either that doctrine or corporate estoppel, for either to be applicable in this case, Hill must have acted in good faith.

The trial judge below found that County Concrete was, in fact, misled as to the identity of the entity with whom it contracted. The trial judge found that Hill acted in good faith until he was advised by his attorney that he and Newman could not operate as "C & M Builders, Inc." and that there was already in existence an unrelated entity with that name. Despite the fact that this knowledge was obtained in February, 1989, at or about the same time that the relationship began with County Concrete, Hill and Newman continued to use the name, "C & M Builders, Inc." or "C & M Builders," instead of disclosing the proper name. Additionally, the trial judge pointed out that this was in violation of Maryland statutes. Corporations & Associations Art. § 2–106(b) prohib-

its the use of a corporate name that is misleadingly similar to another corporation, and § 1–406 prohibits the use of a tradename that is misleadingly similar to a corporate name. When Hill and Newman used the name, "C & M Builders, Inc.," they violated § 2–106(b), and when they used the name, "C & M Builders," as a tradename, they violated § 1–406. The purpose of the statute prohibiting the name of a corporation from being the same as or misleadingly similar to another is to avoid confusion by the general public and the State Department of Assessments & Taxation. *National Shoe Stores Co. v. National Shoes of New York, Inc.*, 213 Md. 328, 131 A.2d 909 (1957). Hill knew or should have known no later than April, 1991, that at least one member of the public was confused. An entity known as Maryland Portable Concrete, Inc. had filed two suits against "C & M Builders, Inc." in February, 1991 in the Circuit Court for Harford County. On April 29, 1991, a Motion to Alter or Amend Judgment was filed in those cases by counsel for "H & N Construction, Inc., t/a C & M Builders." The motions recited that movant had done business with Maryland Portable Concrete, Inc. and was the proper defendant and that the "C & M Builders, Inc." served was not the proper defendant.

The trial judge refused to apply corporate estoppel based on Hill's lack of good faith. The factual finding to support this conclusion was not clearly erroneous.

The trial judge also discussed the principles of general equitable estoppel. We need not address whether there are any differences between corporate estoppel and equitable estoppel. The issue is not relevant here as the absence of good faith prevents the application of estoppel in either form.

It may be argued that County Concrete was not prejudiced as the result of Hill's lack of disclosure. The record reflects that the last delivery of concrete was on May 8, 1991; that this suit was filed on June 6, 1991; that the charter of "H & N Construction, Inc." was forfeited on October 5, 1992; and that County Concrete did not learn of the identity of "H & N Construction, Inc." until January, 1994. It is not clear from

the record whether County Concrete would have been able to sue and recover monies from "H & N Construction, Inc.," had its identity been revealed as of the time of contracting with County Concrete or at any specific point in time thereafter. As the trial judge correctly observed, however, estoppel is an affirmative defense and the burden of proof was on Hill to establish lack of prejudice to County Concrete. There was no evidence in this regard to support such an assertion.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.