*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-CV-322

REGINALD SCOTT, APPELLANT,

V.

FEDCHOICE FEDERAL CREDIT UNION
AND
ALEXANDRIA KELLY, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-4346-19)

(Hon. Robert R. Rigsby, Trial Judge)

(Submitted January 19, 2021                    Decided May 12, 2022)

*Dean Gregory* for appellant.

*John M. Bredehoft* for appellee.

Before GLICKMAN and DEAHL, *Associate Judges*, and FERREN, *Senior Judge*.

GLICKMAN, *Associate Judge*:  Reginald Scott appeals the Superior Court's

dismissal of his Third Amended Complaint against FedChoice Federal Credit Union

(FedChoice) and its former employee Alexandria Kelly for violations of the

Maryland Consumer Debt Collection Act (MCDCA).[1] The trial court concluded that the complaint failed to state a claim under the MCDCA on which relief could be granted, and that any actions Ms. Kelly took as FedChoice's agent did not expose her to liability even if those actions did violate the MCDCA. For the reasons that follow, we reverse both rulings and remand for further proceedings.

## I.

### A. The Allegations of Scott's Third Amended Complaint

As alleged in his Third Amended Complaint, Mr. Scott is a retiree who resides in the District of Columbia. FedChoice, a federally chartered and federally insured credit union, has its principal place of business in Maryland. At all times relevant to this case, Ms. Kelly was a FedChoice employee handling debt collection on its behalf.

In 2012, Scott opened a consumer credit card account at FedChoice. His credit card agreement with FedChoice states that it is governed by the law of Maryland. In 2018, after suffering health problems, Scott defaulted on his accumulated FedChoice credit card debt. Between February and June 2019, FedChoice and Kelly communicated with Scott in attempting to collect the debt. In

---

[1] Md. Comm. L. Code §§ 14-201–14-204.

doing so, the complaint alleges, they violated the prohibition in Section 14-202(6) of the MCDCA against communicating with a debtor in a "manner as reasonably can be expected to abuse or harass the debtor."[2] The complaint alleges the following four violations, each of which involved actions by Kelly on behalf of FedChoice:

(1) sending Scott four letters warning that FedChoice might sue him to collect his debt, the last of which said that "unless settlement is made within FIVE DAYS . . . legal proceedings may be instituted against you to recover this claim," even though (the complaint alleges) "the decision to sue had not been made" at that time;

(2) requiring Scott to make a partial payment of his credit card debt before allowing him to withdraw "exempt retirement funds" from an account he maintained at FedChoice;[3]

(3) repeatedly contacting Scott directly, by letter, telephone, and in person (when he withdrew funds from his account) to demand payment of the

---

[2] It is undisputed that the MCDCA applies to this action because the credit card agreement states it is governed by Maryland law. Although the Third Amended Complaint also alleged violations of District of Columbia law, Scott does not pursue those claims on appeal.

[3] Scott has abandoned this claim on appeal.

credit card debt, despite FedChoice having been informed he was represented by counsel; and

(4) calling Scott and "repeatedly demanding payment and threatening Scott with legal action knowing he was in the hospital, on medication, and on a dialysis machine."

We provide additional details of the alleged violations in our discussion below of the legal sufficiency of the complaint.

**B. Dismissal of the Complaint for Failure to State a Claim**

Appellees moved to dismiss the Third Amended Complaint pursuant to Superior Court Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. The motion was based, in part, on the terms of Scott's credit card agreement, which was referenced in the complaint though not appended to it. Scott opposed the motion to dismiss but it does not appear that he objected to its reliance on the credit card agreement or disputed the authenticity of that agreement.

In April 2020, the Superior Court granted appellees' motion and dismissed the Third Amended Complaint for failure to state a claim under § 14-202(6) of the MCDCA for the following reasons:

(1) the notices of a potential lawsuit to collect the credit card debt were neither abusive nor harassing, given that the credit card agreement put Scott on notice that his default could trigger such legal action;

(2) preventing Scott from withdrawing funds from his account at FedChoice was not abusive or harassing, inasmuch as he had contractually agreed (in his credit card agreement) to allow FedChoice to freeze his account and apply any account balance to the credit card debt in the event of a default;

(3) direct contact with a debtor after being informed that the debtor had retained legal representation is not prohibited by § 14-202(6); and

(4) contacting Scott when he was in the hospital was not actionable because "[Scott] makes no assertion of continued phone calls after Kelly was made aware of [Scott's] hospitalization."

Additionally, the court ruled that Scott failed to state a claim against Kelly in her individual capacity because she "was working within the scope of her employment" and appellant "ha[d] not alleged that Kelly committed any sort of intentional tort."

## II.

### A. Standard of Review

"The only issue on review of a dismissal made pursuant to Rule 12(b)(6) is the legal sufficiency of the complaint."[4] As a motion to dismiss a complaint "presents questions of law, our standard of review . . . is de novo."[5]

All that is required for a complaint to be sufficient is "a short and plain statement of the claim showing that the pleader is entitled to relief."[6] We "construe the complaint in the light most favorable to the plaintiff by taking the facts alleged in the complaint as true."[7] The complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[8]

Generally speaking, "a defendant raising a 12(b)(6) defense cannot assert any facts which do not appear on the face of the complaint itself."[9] If the trial court

---

[4] *Grayson v. AT&T Corp.*, 15 A.3d 219, 228-29 (D.C. 2011) (en banc) (quoting *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 316 (D.C. 2008)).

[5] *Johnson-El v. District of Columbia*, 579 A.2d 163, 166 (D.C. 1990).

[6] Super. Ct. Civ. R. 8(a)(2); *In re Estate of Curseen v. Ingersoll*, 890 A.2d 191, 193-94 (D.C. 2006).

[7] *Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 709 (D.C. 2013).

[8] *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 544 (D.C. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

[9] *Carey v. Edgewood Mgmt. Corp.*, 754 A.2d 951, 954 (D.C. 2000).

decides a Rule 12(b)(6) motion by considering factual material outside the complaint, the motion normally should be treated as a motion for summary judgment.[10] We have held, however, that the trial court is permitted to consider documents that a defendant attaches to a motion to dismiss when the plaintiff referenced those documents in the complaint and they are central to the claim; this does not convert the motion to dismiss into one for summary judgment because such documents may be considered part of the pleadings.[11]

## B. The Maryland Consumer Debt Collection Act

The Maryland Court of Appeals has described the MCDCA as a "remedial consumer protection and licensing statute[]," enacted with "the overarching purpose and intent . . . to protect the public from unfair or deceptive trade practices by creditors engaged in debt collection activities."[12] To that end, Section 14-202 lists

---

[10] *Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015) (citing *Kitt v. Pathmakers, Inc.*, 672 A.2d 76, 79 (D.C. 1996)).

[11] *See Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1025 (D.C. 2007) (citing cases).

[12] *Andrews & Lawrence Prof'l Servs. v. Mills*, 223 A.3d 947, 950 (Md. 2020).

acts that a "collector" cannot take when "collecting or attempting to collect an alleged debt."[13]  Two provisions of this statute are pertinent to this appeal.

First, § 14-202(6) prohibits a collector from "[c]ommunicat[ing] with the debtor or a person related to him with the frequency, at the unusual hours, or in *any other manner as reasonably can be expected to abuse or harass the debtor*."  Scott argued in the trial court and maintains on appeal that appellees violated the italicized portion of this provision.[14]  The MCDCA does not define the terms "abuse" or "harass."  The Maryland state courts have not undertaken to give a definitive construction of those terms either.  However, the Maryland Court of Appeals has said that a remedial statute like the MCDCA "must be liberally construed, in order to effectuate its broad remedial purpose."[15]

---

[13] The MCDCA defines a "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction," § 14-201(b).  The term "person" includes "an individual, corporation, business trust, statutory trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity."  § 14-201(d).

[14] Scott does not claim that appellees communicated with him with undue frequency or at unusual hours.

[15] *Andrews & Lawrence Prof'l Servs.,* 223 A.3d at 968 (quotation marks and citation omitted); *see also Alexander v. Carrington Mortg. Servs.*, 23 F.4th 370, 375-76 (4th Cir. 2022) ("The Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act (MCPA) are remedial consumer protection statutes.  As

For further guidance as to the use of terms like abuse and harassment in this legal context, we may look to the legal dictionary. Black's Law Dictionary defines "abuse" as "[a] departure from legal or reasonable use; misuse," or "[c]ruel or violent treatment of someone; specif[ically], physical or mental maltreatment, often resulting in mental, emotional, sexual, or physical injury."[16] The same dictionary defines "harassment" as "[w]ords, conduct, or action (usu[ally] repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress to that person and serves no legitimate purpose; purposeful vexation."[17] Federal courts construing § 14-202(6) also have looked to the "substantively very similar" prohibitions in § 806 of the federal Fair Debt Collection Practices Act (FDCPA).[18] That section provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."[19] Section 806 further states that, "[w]ithout limiting the general application of" that

---

such, they must be liberally construed, in order to effectuate their broad remedial purpose.").

[16] *Abuse*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[17] *Harassment*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[18] *Askew v. HRFC, LLC*, 810 F.3d 263, 273 n.4 (4th Cir. 2016).

[19] 15 U.S.C. § 1692d.

prohibition, it encompasses such conduct as "[t]he use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person"; "[t]he use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader"; publication or advertisement of the debt or the debtor's identity; and "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."[20]

The second provision of the MCDCA pertinent to this appeal is §14-202(11). This provision prohibits Maryland collectors from engaging "in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act." This prohibition is relevant here because § 805(a)(2) of the FDCPA provides that "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address," unless the attorney fails to respond within a reasonable period of time or consents to direct communication with the consumer.[21]

---

[20] *Id.*

[21] 15 U.S.C. § 1692c(a)(2). In *Alexander*, the Fourth Circuit held that a person need not be a "debt collector" within the meaning of the FDCPA in order to be liable for a § 14-202(11) violation. It found that the "Maryland legislature was intentional

Although the Third Amended Complaint alleges that appellees violated the MCDCA by continuing to communicate directly with Scott after being informed he had counsel, the complaint does not cite §14-202(11) specifically; nor does it appear that Scott specifically invoked that provision in argument before the trial court. Instead, Scott simply argued that appellees violated the general prohibition against abuse and harassment in §14-202(6). This also has been Scott's argument on appeal (though his reply brief does cite both §14-202(11) and the prohibition in § 805(a)(2) of the FDCPA in support of his argument). But Scott's failure to cite the most pertinent provision of the MCDCA in his complaint does not mean he failed to state a claim on which relief could be granted; that depends on the complaint's factual allegations. Nor do we think Scott forfeited his claim that the trial court erred in dismissing the complaint for failure to state a claim merely because he has argued that appellees' conduct violated § 14-202(6) rather than § 14-202(11). For purposes of preservation, we deem it sufficient that Scott alleged the wrongful conduct with specificity and asserted in the trial court and on appeal that it violated § 14-202.

---

on this front: it incorporated only the FDCPA's 'substantive provisions' (sections 804 through 812). It did not incorporate section 803, which includes the FDCPA's narrower definition of 'debt collector.'" 23 F.4th at 379 (internal citations omitted). Thus, the fact that FedChoice and Kelly do not fall within the FDCPA's definition of "debt collector" does not immunize them from liability under § 14-202(11) for conduct that would violate the FDCPA if committed by a "debt collector."

**C. The Claims for Relief Against FedChoice and Kelly**

On appeal, Scott contends the Third Amended Complaint adequately alleged that FedChoice and Kelly violated the MCDCA (1) by sending him dunning letters warning of the possible initiation of legal proceedings against him, the last of which suggested suit might be imminent if he did not promptly settle his debt; (2) by communicating with him directly after being informed that he was represented by counsel; and (3) by calling him and demanding payment while he was ill and receiving medical treatment.[22]

We agree with the trial court that, by themselves, Scott's allegations regarding the contents of the dunning letters he received do not state a plausible claim that appellees communicated with him in a manner reasonably expected to abuse or harass him, as prohibited by § 14-202(6). In his credit card agreement with FedChoice, Scott promised to pay his credit card account balances; agreed that if he defaulted on that promise, the entire account balance and all finance charges would become due and payable immediately; and agreed he would be liable for court costs,

---

[22] Because Scott makes no argument on appeal that appellees violated the MCDCA by precluding him from withdrawing funds from his personal account at FedChoice unless he made a partial payment of his credit card debt, we do not address that issue.

reasonable attorney's fees, and other collection costs incurred by FedChoice as a result of his default, to the extent allowed by law.[23] Citing these provisions, the trial court held that the "notices of potential suit were not abusive or harassing, but rather intended to collect, settle, and notify the breach[ing] party of possible future legal action for failure to pay." We add that the letters FedChoice and Kelly sent Scott were not false or misleading; they said only that FedChoice "may" institute legal proceedings, not that it already had done so or decided to do so. Moreover, only the fourth and final letter implied that a lawsuit might be imminent; Scott was not subjected to a continuous barrage of letters threatening impending litigation. The letters did not threaten other consequences, their tone was not nasty or abusive, and they were not otherwise abusive or harassing as those words are normally understood in this context. As the Fourth Circuit has explained, "there is a line between truthful or future threats of appropriate legal action, which [do] not give rise to liability, and

---

[23] For the reasons discussed above, the trial court was permitted to consider the credit card agreement without treating the motion to dismiss as one for summary judgment. As the predicate for invoking Scott's rights under the MCDCA, the Third Amended Complaint explicitly referred to the agreement and alleged that it was "governed by Maryland law." The authenticity of the credit card agreement submitted with the motion to dismiss is undisputed and Scott has raised no objection to the trial court's consideration of it.

false representations that legal action has already been taken against a debtor . . . ."[24] We agree that a creditor or debt collector does not harass or abuse a debtor within the meaning of § 14-202(6) merely by threatening "to use lawful procedures to collect a delinquent debt."[25]

We view differently the allegations that FedChoice and Kelly continued to communicate with Scott directly by dunning letters and phone calls after learning he had retained counsel to deal with them and after learning of his health issues. The Third Amended Complaint alleges that FedChoice was notified on March 5, 2019, that Scott had retained counsel (a law firm identified as Summit Law Firm) to represent him with regard to his defaulted credit card account. The complaint attaches as an exhibit confirming this allegation Summit Law Firm's March 5, 2019 letter of representation, which allegedly informed FedChoice it should "communicate directly with our office . . . in regard to any matter concerning this

---

[24] *Askew*, 810 F.3d at 272 (adding that "[a] jury could find that attempting to collect a debt by falsely claiming that legal actions have been taken against a debtor violates section 14-202(6)").

[25] *Dick v. Mercantile-Safe Deposit and Trust Co.*, 492 A.2d 674, 678-79 (Md. Ct. Spec. App. 1985) (holding that it is not "grossly abusive" under § 14-202(7) to threaten legal action to collect a debt).

debt," and furnished the firm's address and phone and fax numbers.[26]  After that date, however, appellees allegedly sent Scott an "attorney action letter" and two "notice before suit" letters, called Scott four times about the debt, and requested payment from him in person when he visited a FedChoice branch to withdraw funds from his personal account there.  On May 2, 2019, during one of the phone calls, Scott told Kelly he had been represented by counsel since February 2019 and that she needed to contact his attorney.  Kelly allegedly replied that she would continue communicating with Scott directly.

The Third Amended Complaint alleges four further communications from Kelly directly to Scott in June 2019.  First, on May 13, 2019, Kelly called Scott and was informed "right away" that he was on a dialysis machine and could start bleeding if he continued the call.  Next, on June 4, 2019, Kelly sent Scott the second "Notice Before Suit" letter.  This was the letter containing the statement that "unless settlement is made within FIVE DAYS . . . legal proceedings may be instituted against you to recover" the claimed debt.  Kelly then called Scott on June 20 and "was informed that he goes to the doctor at least two times per week."  Lastly, the complaint alleges that a week later on June 27, "Kelly called Scott and was informed

---

[26]  While there may be a factual dispute as to whether, or when, FedChoice and Kelly received this letter from Summit Law Firm, that is not a question to be resolved at this stage of the proceeding.

he was in the hospital." Kelly allegedly noted that Scott "sounded like he was on some type of medication," but nonetheless "demanded [that] Scott make a payment."

We think these allegations state a claim that appellees violated the MCDCA with sufficient plausibility to survive a motion to dismiss under Rule 12(b)(6). As discussed above, § 14-202(11) incorporates the prohibition in § 805(a)(2) of the FDCPA that "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address," unless the attorney fails to respond within a reasonable period of time or consents to direct communication with the consumer. The Third Amended Complaint alleges just such a violation by Kelly and FedChoice.

That Kelly allegedly called Scott when he was on dialysis and (at least thereafter) knowing he had some health issues does not, in itself, amount to harassment or abuse in our view, though it may be taken as aggravating the violation of communicating with him knowing he was represented by counsel. But the allegation that Kelly demanded payment from Scott in a phone call *after* learning he was then in the hospital and "sounded like he was on some type of medication" plausibly could state a claim of abuse or harassment in violation of § 14-202(6),

especially when considered in conjunction with the request that she communicate with counsel. Our obligation to construe the MCDCA liberally, to effectuate its broad remedial purposes, supports that conclusion.[27]

The final issue we must address is the trial court's dismissal of Kelly from the litigation. The court concluded that Scott had not stated a claim against Kelly in her individual capacity since Kelly concededly was working within the scope of her employment as the agent of FedChoice when she communicated with Scott, and Scott had "not alleged that Kelly committed any sort of intentional tort[.]" Under agency law "[i]t is well established," the court noted, "that when an agent is acting on behalf of a disclosed princip[al] and . . . the act conducted is within the scope of the agent's authority, then the agent is not liable for the acts committed absent some clear promise from the agent that they will be liable."

We conclude that the court erred in dismissing Kelly. The principles of agency law on which the court relied are applicable where an agent enters into a

---

[27] *Cf. Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1068 (Md. Ct. Spec. App. 1986) (holding that a violation of § 14-202(6) "could be found" where collectors "telephoned . . . one of the debtors . . . several times, despite protestations that [she] was unable to pay the debt, that she did not know where the truck was located, that her husband was ill and the telephone calls were disturbing; they called despite [her] requests to stop calling; and they called at least once late at night").

contract on behalf of a principal — the agent can be personally liable on the contract if the principal was not disclosed, but would not be liable if the principal is disclosed.[28] But this is not a contract case; the issue here is whether an agent can be held personally liable for violating a statute on behalf of a principal. In addition, the trial court's assumption that there was no allegation Kelly had committed an intentional tort is incorrect. Violation of the MCDCA is a tort.[29] Under agency principles in both Maryland and the District of Columbia, "[t]he general rule is that the corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body."[30] Thus, courts applying Maryland law have held that "when a corporation violates a statute, individuals who 'voluntarily and intentionally caused the corporation to act' in violation of the statute can be

---

[28] *See Rittenberg v. Donohoe Const. Co., Inc.*, 426 A.2d 338, 341 (D.C. 1981); *Hill v. Cnty. Concrete Co.*, 672 A.2d 667, 670 (Md. Ct. Spec. App. 1996); *see also Rosenthal v. Nat'l Produce Co.*, 573 A.2d 365, 369 (D.C. 1990).

[29] *See Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 596 (D. Md. 1999) ("[T]he MCDCA creates a statutory cause of action along the lines of common law torts").

[30] *Fontell v. Hassett*, 891 F. Supp. 2d 739, 742 (D. Md. 2012); *see also Camacho v. 1440 Rhode Island Ave. Corp.*, 620 A.2d 242, 246-47 (D.C. 1993) ("An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal." (quoting Restatement (Second) of Agency § 343 (1984))).

personally liable for those statutory violations[.]"[31]  In accordance with this principle, the U.S. District Court for the District of Maryland has imposed personal liability on employees of a debt collector for violating §14-202 of the MCDCA.[32]

The plain language of the MCDCA supports the imposition of liability on the employees of a creditor or debt collector for conduct proscribed by §14-202. Liability under the MCDCA attaches to "[a] collector who violates any provision of this subtitle," and the collector is "liable for any damages proximately caused by the violation."[33]  A "collector" is defined as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction,"[34] and "person" includes "an individual, corporation, business trust, statutory trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity."[35]  Individual employees fall within this definition.

---

[31] *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 416 (D. Md. 2011).

[32] *Fontell*, 891 F. Supp. 2d at 742-43.

[33] § 14-203.

[34] § 14-201(b).

[35] § 14-201(d). *See also Andrews & Lawrence Prof'l Servs.*, 223 A.3d at 961 ("The MCDCA regulates any person collecting or attempting to collect an alleged debt arising out of a consumer transaction.") (internal quotation marks omitted).

Accordingly, we conclude that the trial court erred in dismissing Kelly from appellant's action for violation of the MCDCA. She is amenable to suit in her individual capacity under the MCDCA's broad definition of "collector."

### III.

For the foregoing reasons, we reverse the dismissal of the Third Amended Complaint for failure to state a claim on which relief may be granted. We also reverse the dismissal of Ms. Kelly from the litigation. We remand the case for further proceedings consistent with this opinion.

*So ordered.*