**ODYSSEY TRAVEL CENTER, INC.**

v.

**RO CRUISES, INC.**

No. CIV.A. DKC 2002–0032.

United States District Court,
D. Maryland.

May 9, 2003.

James L Marketos, Washington, DC, MaryEllen Noone, Berliner Corcoran and Rowe LLP, Washington, DC, for Plaintiff.

Michael E Unger, Freehill Hogan and Mahar LLP, New York, NY, John H West, III, West and Moore LLC, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this case are the motion of Defendant RO Cruises, Inc. ("ROC")[1] for summary judgment and the conditional motion of Plaintiff Odyssey Travel Center, Inc. ("Plaintiff" or "Odyssey") for leave to file an amended complaint. The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For the reasons set forth in this opinion, Defendant's motion for summary judgment will be granted in part and denied in part, and Plaintiff's motion for leave to file an amended complaint will be denied.

## I. Background

The following facts are uncontroverted or set forth in the light most favorable to Plaintiff. Odyssey is a small, 30 year-old travel agency based in Bethesda, Maryland and owned by Dan Patras ("Patras"). Odyssey's principal customer base is the Greek American community of the Washington metropolitan area. Odyssey organizes individual and group travel, including cruises, to Greece, the Carribean, and elsewhere. For most of its existence, Odyssey has conducted business with ROC and its predecessors-in-interest by arranging for travel by Odyssey's customers aboard cruises promoted by ROC.

Defendant ROC is a New York corporation that serves as the North American sales and marketing agent for a cruise ship operator, which Defendant contends is Royal Olympic Cruises, Ltd. ("ROC, Ltd."), based in Piraeus, Greece. Plaintiff, on the other hand, relies on documents filed by Royal Olympic Cruise Lines, Inc.

1. The court will use the same abbreviations adopted by the parties.

("ROC, Inc.") with the Securities and Exchanges Commission ("SEC"), demonstrating that ROC and ROC, Ltd. are both wholly-owned subsidiaries of ROC, Inc., which is a public company incorporated in Liberia and based in Greece. *See* Paper no. 22, Ex. B. Plaintiff states that ROC, Inc., operating through subsidiaries, including the two mentioned above, operates an integrated cruise line business under the trade name "Royal Olympic Cruises." *See id.* Defendant ROC employs a sales staff in its New York City office to market cruises aboard vessels, including the *Olympic Countess,* through distribution of brochures and other promotional materials.

In March 1998, Odyssey received a brochure describing Caribbean and South American cruises for the upcoming 1998–99 winter season.[2] *See* Paper no. 22, Ex. E. Among the cruises advertised in the brochure was a round-trip cruise on January 15–25, 1999 aboard the *Olympic Countess*[3] from San Juan, Puerto Rico to the Orinoco River ("Orinoco Cruise"). *Id.* Based largely on the brochure, Odyssey began in early 1998 planning a "4th Grand Hellenic" Caribbean group cruise for Odyssey's customers aboard the *Olympic Countess* during the Orinoco Cruise.

In the course of planning the "4th Grand Hellenic" group cruise, Odyssey had numerous communications with ROC, both in writing and orally. On May 29, 1998, Patras went to New York City to meet with Arne S. Egeland ("Egeland"), then ROC's Vice President of Sales and Marketing, to discuss the group cruise idea and to negotiate terms of ROC's promotional contribution. Following the meeting, Patras had further telephone conversations with Egeland and his staff about Odyssey's planned cruise. By letter dated July 20, 1998, Egeland confirmed certain details of the arrangements. *See* Paper no. 21, Ex. 5. Specifically, Egeland offered Odyssey special net fares for 4th Grand Hellenic group cruise members, complimentary cabins for members of the band hired by Odyssey, and financial contributions for promotion of the cruise. *See id.* ROC sent Odyssey a "Group Confirmation" contract, which in the "Remarks" section at the bottom of the page instructs the recipient to "[p]lease see enclosed Group Policy for terms/conditions."[4] Paper no. 21, Ex. 6. On July 24, 1998, Egeland sent Patras a fax supplementing the terms of the promotional contributions promised in the earlier letter.

Odyssey made substantial efforts to promote the 4th Grand Hellenic cruise aboard the *Olympic Countess,* and between May 1998 and October 30, 1998, devoted most of its efforts to promoting the cruise, foregoing other business opportunities. Odyssey's promotional activities included engaging a band, for which Odyssey entered

---

2. Defendant asserts that the brochure was published by ROC, Ltd. Plaintiff points out that, on the back cover, the publisher is identified as ROC, as agent, and contains the trade name "Royal Olympic Cruises." *See* Paper no. 21, Ex. 7. As Plaintiff also acknowledges, "fine print" near the back of the brochure identifies ROC, Ltd. as the cruise operator with the ability to cancel or change the itinerary. *See id.*

3. According to the SEC filing, the *Olympic Countess* is a vessel owned and operated by ROC, Inc. *See* Paper no. 22, Ex. B.

4. The parties dispute whether ROC actually enclosed a Group Policy form with the Group Confirmation form. However, this dispute is irrelevant because the Group Policy form does not contain any information about cancellation of an entire cruise; it only contains information regarding cancellation by an individual *passenger* or group of passengers. *See* Paper no. 22, Ex. F. It does not, as ROC suggests in its summary judgment motion, appear to incorporate the terms and conditions of the ROC, Ltd. Passage Ticket and Contract, which reserves ROC, Ltd.'s right to cancel a cruise.

into an $11,000 contract, printing and distributing flyers and brochures, and placing advertisements in various Greek American newspapers. *See* Paper no. 2, ¶ 26. On October 30, 1998, Odyssey called ROC to register additional passengers on the cruise and was informed for the first time by a ROC representative, Robert Bush, that the Orinoco Cruise had been cancelled. ROC claimed that the cruise was cancelled in late October 1998 due to poor passenger bookings and revenue projections. ROC offered Odyssey alternative arrangements for the 4th Grand Hellenic group cruise aboard the vessel *Stella Solaris,* but the alternative involved different sailing dates, a longer itinerary, and higher pricing for Odyssey's group members. *See id.,* ¶ 32. As a result of ROC's cancellation of the Orinoco Cruise, Odyssey cancelled the 4th Grand Hellenic cruise. In addition to the promotional expenses incurred, Odyssey alleges that it lost anticipated profits that it would have made on the cruise and ROC's promised contributions toward promotional expenses. Odyssey also alleges that it suffered considerable embarrassment, loss of good will, and injury to its reputation, especially among Greek American customers.

By letters dated March 23 and May 11, 1999, Odyssey submitted claims to ROC for its alleged expenses and losses arising from the cancellation of the Orinoco Cruise. ROC replied in a letter dated September 30, 1999 containing a counteroffer to pay Odyssey compensation of $5,700.70, which Odyssey rejected. Odyssey brought this action in the Circuit Court for Montgomery County, Maryland, and ROC removed it to this court on January 2, 2002. Odyssey alleges five counts against ROC arising from these events: (1) breach of contract; (2) promissory estoppel (in the alternative to breach of contract); (3) negligent misrepresentation; (4) intentional misrepresentation by concealment; and (5) constructive fraud (in the alternative to intentional misrepresentation by concealment). Odyssey seeks actual and consequential damages for these counts, as well as punitive damages for the intentional misrepresentation count. ROC seeks summary judgment on all counts.

## II. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Pulliam Inv. Co.,* 810 F.2d at 1282, *citing Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.,* 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure

of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

In *Celotex Corp.*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir.1984), *quoting Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

### III. Analysis

#### A. Motion for Summary Judgment

#### 1. Breach of Contract (Count I)

Odyssey alleges that its dealings with ROC pertaining to the 4th Grand Hellenic group cruise gave rise to an agreement by ROC to make the *Olympic Countess* available for Odyssey's group during the Orinoco Cruise and to provide discounted rates and promotional assistance in exchange for Odyssey's bookings ("Agreement"). Plaintiff claims that ROC materially breached the Agreement by failing to give timely notice of its intention to cancel the Orinoco Cruise, by cancelling the Orinoco Cruise, and by failing to inform Odyssey that ROC had not obtained the required Certificate of Responsibility from the Federal Maritime Commission ("FMC Certificate") and that its plans for the *Olympic Countess* were uncertain.[5]

Defendant ROC does not contest at this stage that an agreement was made to pro-

---

**5.** Federal maritime law requires parties that "arrange, offer, advertise, or provide passage on a vessel having berth or stateroom accommodations for fifty or more passengers and which is to embark passengers at United States ports" first to file with the Federal Maritime Commission information to establish their financial responsibility, or to file a copy of a bond or other security. *See* 46 U.S. § 817e(a). Applicable regulations require the application to be submitted 60 days before *advertising* the cruise, with late filings permitted only for good cause shown. *See* 46 C.F.R. § 540.4(b). Therefore, ROC, ROC, Ltd., or ROC, Inc. should have applied for the Certificate by the end of January 1998, 60 days before publication of the March 1998 brochure. However, ROC's general counsel did not apply for the FMC Certificate until September 30, 1998. *See* Paper no. 22, Ex. M. ROC's efforts to obtain the Certificate remained unresolved as of October 30, 1998, and the FMC never issued a Certificate for the *Olympic Countess* for the winter 1998–99 season. Additionally, the *Olympic Countess* never obtained the U.S. Coast Guard's Control Verification Certificate, which is required for operation from U.S. ports.

vide Odyssey with discounted rates and promotional assistance in exchange for bookings on the Orinoco Cruise. However, ROC argues that it is entitled to summary judgment on the breach of contract claim because, it contends, Plaintiff's agreement was not with ROC, but rather with ROC, Ltd. Specifically, ROC contends that in its dealings with Odyssey, it acted solely in its capacity as a marketing agent for ROC, Ltd., a fully disclosed principal, and thus cannot be held liable on the contract.

■ Under Maryland law, an agent entering into a contract which fully discloses the fact that it is an agent and fully discloses the identity of its principal is not liable on the contract; the principal is the liable party. *See, e.g., Hill v. County Concrete Co., Inc.,* 108 Md.App. 527, 672 A.2d 667 (Md.Ct.Spec.App.1996). Conversely, an agent who does not make such disclosures is liable on the contract. *Id.*

■ Plaintiff contends that there is a genuine issue of material fact as to whether ROC in fact fully disclosed the identity of its principal. Plaintiff argues that ROC either failed altogether to disclose that it was acting as agent for a principal, or disclosed as its principal merely the "Royal Olympic Cruises" trade name, which is not legally competent to act as a principal. Whether an agent completely fails to make the disclosures or makes partial or inaccurate disclosures, the result is the same. *See Curtis G. Testerman Company v. Buck,* 340 Md. 569, 575–78, 580, 667 A.2d 649, 652–53 (1995); *Crosse v. Callis,* 263 Md. 65, 73, 282 A.2d 86, 90 (1971). Moreover, an agent is held liable when the purported principal disclosed is nonexistent, fictitious, or legally incompetent. *See Testerman,* 340 Md. at 576–77, 667 A.2d at 653 (citation omitted).

To support its argument that ROC failed fully to disclose that it was acting as an agent for ROC, Ltd., Odyssey contends that in its dealings with ROC to plan the 4th Grand Hellenic group cruise and negotiate ROC's promotional contributions—including during Patras' meeting with Egeland—no one at ROC informed Patras that ROC was acting as agent for ROC, Ltd. or any other entity. *See* Paper no. 22, Ex. D (Patras Depo., ¶¶ 4–6). It notes that the July 20, 1998 letter recording the terms of ROC's promotional contributions sent by Egeland to Patras was written on ROC's letterhead, which at the bottom stated "RO Cruises, Inc. as agent for Royal Olympic Cruises." *See* Paper no. 21, Ex. 5. Plaintiff argues that even though the letterhead indicated that ROC was an agent, no legal entity was identified as the principal. Egeland's letter was supplemented by a fax message on July 24, 1998, sent on letterhead which read "Royal Olympic Cruises c/o Royal Olympic Cruises, Inc." Again, the correspondence bore only the trade name "Royal Olympic Cruises" and did not identify ROC, Ltd. as the principal.

Plaintiff further notes that the 1998–99 winter season brochure is emblazoned throughout with the trade name and logo of "Royal Olympic Cruises," including the brochure's outside back cover which, under the trade name, says "RO Cruises, Inc. as agent" in small print. No legal entity is disclosed on the outside back cover as principal. Only in fine print in the brochure's inside back cover is ROC, Ltd. identified as the cruise operator. No subsequent communications from ROC anywhere mentioned ROC, Ltd., let alone explicitly stated that ROC was acting as agent for ROC, Ltd. The Group Confirmation form received by Odyssey contained the heading "Royal Olympic Cruises" in large letters and in small print stated "c/o Sun Line Cruises, Inc." Subsequent forms confirming individual booking arrangements for Odyssey's group members bore the "Royal Olympic Cruises" logo and stated "RO Cruises, Inc. as agent." *See* Paper

no. 22, Ex. G. Defendant ROC argues that the correspondence and forms received by Odyssey with regard to the Orinoco Cruise, as well as Odyssey's thirty years of experience in dealing with ROC, Ltd., ROC and their predecessors, establishes that ROC was merely acting as a sales agent for ROC, Ltd.

■ The various pieces of correspondence from ROC to Odyssey, most importantly the July 20, 1998 letter setting forth the terms of the Agreement, make clear that ROC was acting in its capacity as an agent for "Royal Olympic Cruises" in the marketing of the Orinoco Cruise. There is no evidence that ROC attempted to hide the fact that it was acting as a sales agent for a cruise operator. The crucial issue, therefore, is whether the identity of the principal was disclosed to Odyssey. Odyssey argues that the principal was not disclosed because "Royal Olympic Cruises" is a nonexistent, legally incompetent entity, which cannot shield an agent from contract liability. *See Testerman,* 340 Md. at 576–77, 667 A.2d at 653. ROC argues that, on the contrary, "Royal Olympic Cruises" is at worst a misnomer that merely omitted the "Ltd." from the name of the principal.

In *Testerman,* the Court of Appeals ruled that the use of "Inc." instead of "Company" in a party's name on a contract was merely a misnomer and that the misnamed entity was a valid party to the contract. *See id.,* 340 Md. at 576, 667 A.2d at 652. In so holding, the court stated that " '[a] mistake in setting out the name of a corporation in an instrument is not fatal where the identity of the corporation is apparent.' " *Id.* (citation omitted).

Although no Maryland case directly so holds, the weight of authority is that it is not sufficient to identify a principal by its trade name. For example, in *In re Susan J. Vinales,* 268 B.R. 749, 754 (Bankr. W.D.Va.2001), the court noted:

[T]he use of a trade name or fictitious name that is not properly registered is not sufficient identification of a principal to protect an agent from personal liability for business transactions engaged in between a third party and an agent who is acting on its principal's behalf. *See, e.g.,* 150 A.L.R. 1303 (majority position is that the use of a trade name is not sufficient disclosure of the identity of the principal and of the fact of agency).

Similarly, in *Crolley v. Haygood Contracting, Inc.,* 201 Ga.App. 700, 411 S.E.2d 907, 909 (1991), the court stated that

[w]hile the fact that a trade name was used is a factor to be considered on the issue of disclosure of the agency, [*Fletcher Emerson, etc., Co. v. Davis,* 134 Ga.App. 699, 700–701(1), 215 S.E.2d 725 (1975) ] *id.* at 701(1, 215 S.E.2d 725), " '[t]he disclosure of an agency is not complete for the purpose of relieving the agent from personal liability unless it embraces the name of the principal [, and] the use of a trade name is not necessarily a sufficient disclosure of the identity of the principal and the fact of agency so as to protect the agent against personal liability. *Brown–Wright* [*v. Bagen,* 112 Ga.App. 300, 302, 145 S.E.2d 294 (1965) ], *supra.* A trade name is merely a name assumed or used by a person recognized as a legal entity . . . .' " *Samples v. Ga. Mut. Ins. Co.,* 110 Ga.App. 297, 299, 138 S.E.2d 463 (1964).

Defendant asserts that its fully disclosed principal was ROC, Ltd. However, nowhere is it expressly stated that ROC was acting as agent for ROC, Ltd.; rather, the letterhead on which the Agreement was printed, the winter 1998–99 brochure, and subsequent correspondence only identify "Royal Olympic Cruises" as the principal. According to the documents filed with the SEC, the corporation that uses the trade

name "Royal Olympic Cruises" is ROC, Inc., not ROC, Ltd. While the brochure identified ROC, Ltd. as the corporation that had the ability to cancel the cruise or change its itinerary, it is nowhere identified as the principal for ROC. Thus, Defendant's argument that (1) identifying itself as agent for "Royal Olympic Cruises" and (2) identifying ROC, Ltd. as the corporation with the ability to control the cruise, when (3) "Royal Olympic Cruises" as a trade name belongs to ROC, Inc., fails to shield Defendant from liability. Because it failed to disclose fully its principal, Defendant ROC can be held liable on the contract, and Defendant's motion for summary judgment will be denied as to Count I.

### 2. Promissory Estoppel (Count II)

■ Odyssey alleges, in the alternative, a promissory estoppel claim against ROC. Odyssey claims that ROC made promises to it that the *Olympic Countess* would sail for the Orinoco Cruise and that it would provide special fares for Odyssey's group, complimentary cabins for Odyssey's band, and promotional assistance. Promissory estoppel is a quasi-contractual claim, which is an equitable remedy that permits recovery " 'where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise.' " *Swedish Civil Aviation Admin. v. Project Management Enters., Inc.,* 190 F.Supp.2d 785, 792 (D.Md.2002) (internal citation omitted). " '[N]o quasi-contractual claim can arise when a contract exists ... con-

cerning the same subject matter on which the quasi-contractual claim rests ....' " *Id.* (internal citations omitted).

Plaintiff stated in its opposition that it would voluntarily withdraw count II if allowed to proceed on count I, which, as discussed above, it will be permitted to do.[6] The promissory estoppel claim would be barred, in any event, because a contract undisputedly exists concerning the same subject matter on which the quasi-contractual claim rests. Defendant's motion for summary judgment as to Count II is granted.

### 3. Negligent Misrepresentation (Count III)

■ Odyssey alleges that ROC negligently misrepresented the truth by making incomplete representations to Odyssey and failing to disclose material facts regarding the Orinoco Cruise. Specifically, Odyssey alleges that ROC represented that the *Olympic Countess* would be available for the 4th Grand Hellenic cruise during the Orinoco Cruise without revealing that its winter 1998–99 plans for the ship were uncertain and that it had not obtained the required FMC Certificate for the Orinoco Cruise. Under Maryland law, to prevail on a claim of negligent misrepresentation, a plaintiff must establish that: (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the

---

**6.** Note that if ROC was acting as an agent for ROC, Ltd. when it allegedly made the promises to Odyssey, it could not be held liable for promissory estoppel. While Maryland courts do not seem to have addressed the issue, courts that have done so have held that promissory estoppel claims are not viable against an agent for a disclosed principal. *See, e.g., Zimmerman v. First Federal Savings and Loan*

*Ass'n of Rapid City, S.D., et al.,* 848 F.2d 1047 (10th Cir.1988); *Degen v. Am. Ass'n of Oral and Maxillofacial Surgeons,* 1994 WL 13754 (N.D.Ill.1994); *Froelich v. Aspenal, Inc.,* 369 N.W.2d 37 (Minn.Ct.App.1985), *citing* RESTATEMENT (SECOND) OF AGENCY § 320 (1958); *Riddle v. Lacey & Jones,* 135 Mich.App. 241, 351 N.W.2d 916 (Mich.Ct.App.1984).

statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence. *See Swinson v. Lords Landing Village Condominium,* 360 Md. 462, 477, 758 A.2d 1008, 1016 (2000); *Griesi v. Atlantic General Hospital Corp.,* 360 Md. 1, 11, 756 A.2d 548, 553 (2000), *citing Weisman v. Connors,* 312 Md. 428, 444, 540 A.2d 783, 791 (1988). Defendant has moved for summary judgment on this count on the sole basis that it had no duty of care to Odyssey.

■ It is well-settled Maryland law that a duty giving rise to a tort action must be independent of contractual obligations. *See Mesmer v. Maryland Automobile Ins. Fund,* 353 Md. 241, 725 A.2d 1053 (1999); *Heckrotte v. Riddle,* 224 Md. 591, 168 A.2d 879 (1961). "The mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that out of the contract itself, is not enough to sustain an action sounding in tort." *Heckrotte,* 224 Md. at 595, 168 A.2d at 882. The Court of Appeals recently held that "[a]s a general rule, when the failure to exercise due care creates a risk of economic loss only, and not the risk of personal injury, we have required an 'intimate nexus' between the parties as a condition to the imposition of tort liability." *Swinson,* 360 Md. at 477, 758 A.2d at 1016 (citations omitted). *See also Griesi,* 360 Md. at 12–13, 756 A.2d at 554 ("[f]or claims of economic loss due to negligent misrepresentation, the injured party must prove that the defendant owed him or her a duty of care by demonstrating an intimate nexus between them"), *citing Jacques v. First Nat'l*

*Bank of Maryland,* 307 Md. 527, 534–35, 515 A.2d 756, 759–60 (1986).

■ Odyssey contends that ROC's duty arises from such a preexisting "intimate nexus" between ROC and Odyssey.[7] Odyssey suggests that several factors created the intimate nexus between the parties: (1) the parties' long history of dealings; (2) ROC's knowledge that Odyssey was relying on the availability of the *Olympic Countess* for the 4th Grand Hellenic cruise and was undertaking extensive activities and incurring expenses to promote the cruise; and (3) ROC's superior knowledge about its own plans for the *Olympic Countess.* As support for its argument, Odyssey cites *Griesi,* which stated that "[t]he intimate nexus may be demonstrated by showing contractual privity or its equivalent," and that the equivalent can be found in "special relationships consummated during the course of pre-contractual negotiations." 360 Md. at 12–13, 756 A.2d at 554. Odyssey asserts that the parties had a special relationship arising from their historical dealings, which pre-dated the brochure for the Orinoco Cruise by over two decades, and/or from their pre-contractual negotiations in Egeland's office on May 29, 1998 and thereafter. According to Odyssey, ROC's duty therefore pre-dated, and was independent of, any contractual obligations owed by ROC, Ltd.

Several Maryland cases have found an intimate nexus where a special relationship was consummated during the course of pre-contractual negotiations. For example, in *Griesi,* the plaintiff argued that he and the defendant had formed a special relationship during the course of employment negotiations which gave rise to defendant owing him a duty to exercising

---

7. Unlike a breach of contract claim, an agent's disclosure of a principal has no bearing on the agent's liability in a tort claim. A plaintiff can sue either or both of them, at its election. *See, e.g., Anne Arundel Med. Center, Inc. v. Condon,* 102 Md.App. 408, 649 A.2d 1189 (Md.App.1994).

reasonable care in disseminating information regarding the true employment situation. *See Griesi*, 360 Md. at 10, 756 A.2d at 552. The Court of Appeals agreed, finding that an intimate nexus had been created during the course of pre-employment negotiations for the physical therapist position. *See id.*, 360 Md. at 16, 756 A.2d at 556. *See also Weisman*, 312 Md. at 448–49, 540 A.2d at 793 (1988) (holding that negligent misrepresentation is a viable cause of action in pre-contract employment negotiations). In *Griesi*, the court stated that

> we weigh heavily in our analysis that [defendant] had exclusive control of vital and material information necessary for [plaintiff] fully to understand the situation, and that it never disclosed such information to [plaintiff].... [Plaintiff] put confidence in the accuracy of [agent's] positive and unequivocal representations ....

*Id.* at 17, 756 A.2d at 556. The Court of Appeals similarly found in *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 331–38, 439 A.2d 534, 536–39 (1982), that the facts were sufficient for a jury to determine that an intimate nexus had been created during pre-contractual negotiations where defective financial statements were allegedly presented to the buyer of a car dealership. In *Weisman*, the Court of Appeals determined that there was an intimate nexus between the parties despite the defendant's argument that both parties were sophisticated businessmen, otherwise unfamiliar to one another, who simply engaged in arm's length discussions to negotiate a mutually advantageous agreement. *Weisman*, 312 Md. at 441, 540 A.2d at 789. *See also Giant Food v. Ice King*, 74 Md.App. 183, 536 A.2d 1182 (1988) (finding that a buyer of ice owed a duty to give correct information to the ice supplier because a "special relationship" existed between the parties by reason of communications extending over seven months).

■ Similar to the circumstances in these cases, Odyssey and ROC engaged in communications over many months for the purposes of negotiating a promotional assistance agreement and making plans for the 4th Grand Hellenic Cruise to take place aboard the *Olympic Countess* during the Orinoco Cruise. Moreover, the parties had a pre-existing relationship dating back nearly thirty years during which Odyssey booked many customers on cruises promoted by ROC and its predecessor companies. Like the defendant in *Griesi*, ROC (and its principal) had exclusive control over material information necessary for Odyssey to understand the situation. For these reasons, the court is satisfied that Odyssey has provided evidence sufficient to establish that ROC owed Odyssey a duty of care independent of any contractual obligations entered into by ROC on behalf of ROC, Ltd. Accordingly, Defendant's motion for summary judgment on this count will be denied.

### 4. Intentional Misrepresentation by Concealment (Count IV)

Odyssey alleges that ROC intentionally concealed its uncertainty about the *Olympic Countess*'s 1998–99 winter season and its failure to obtain the FMC Certificate, knowing that Odyssey was promoting the Orinoco Cruise, for the purposes of defrauding Odyssey. Odyssey alleges, in the alternative, that ROC's conduct deceived Odyssey, even if unintentionally.

■ In order to prevail on a claim of intentional misrepresentation by concealment, or fraudulent concealment, Plaintiff must prove the following elements: (1) Defendant owed Plaintiff a duty to disclose a material fact; (2) Defendant failed to disclose that fact; (3) Defendant intended to defraud or deceive Plaintiff; (4) Plaintiff took action in justifiable reliance on the concealment; and (5) Plaintiff

suffered damages as a result of Defendant's concealment. *See Green v. H & R Block, Inc.*, 355 Md. 488, 525, 735 A.2d 1039, 1059 (1999), *citing Finch v. Hughes Aircraft Co.*, 57 Md.App. 190, 231–32, 469, 469 A.2d 867 A.2d A.2d 867, 888 (1984). Plaintiff must prove *either* that Defendant had a duty to disclose a material fact to them and failed to do so, or that Defendant concealed a material fact for the purpose of defrauding Plaintiff. *See Shaw v. Brown & Williamson Tobacco Corp.*, 973 F.Supp. 539, 551 (D.Md.1997), *citing Finch,* 57 Md.App. at 232, 469 A.2d at 888 ("mere non-disclosure of facts known to defendant without intent to deceive is not fraud and is not actionable under Maryland law unless there exists a separate duty of disclosure to plaintiff by defendant").

In its motion for summary judgment, ROC argues both that Odyssey has not presented credible evidence that ROC intentionally concealed information for the purpose of defrauding Odyssey and that Odyssey has not established a duty of disclosure to Odyssey. The court agrees with ROC that Plaintiff has not produced sufficient evidence that ROC intentionally concealed a material fact from Plaintiff for the purpose of defrauding it. Plaintiff does no more than surmise that ROC deliberately withheld information—concerning the lack of certificates and ROC's allegedly deteriorating financial conditions—with the intent to defraud. Plaintiff merely speculates that ROC's motive was to prevent travel agents from shying away from the *Olympic Countess.* These unsupported inferences are insufficient to prove that ROC acted with the intent to defraud Plaintiff.

■ Plaintiff also argues, however, that Defendant had a duty to disclose material facts and breached that duty. In the context of a claim of intentional misrepresentation by concealment, a duty to disclose arises where the defendant makes an active misstatement of fact, or only a partial or fragmentary statement of fact, which misleads the plaintiff to its injury. *See Lubore v. RPM Associates, Inc.*, 109 Md.App. 312, 330–31, 674 A.2d 547, 556 (Md.Ct.Spec.App.1996); *Walsh v. Edwards*, 233 Md. 552, 557, 197 A.2d 424, 426–427 (1964).[8] "[O]rdinarily when one owes no legal obligation to speak, mere silence is not actionable; but if what is stated amounts to a 'partial and fragmentary' disclosure, that misleads because of incompleteness, the 'legal situation is entirely changed.'" *Lubore,* 109 Md.App. at 330–31, 674 A.2d at 556 (internal citation omitted).

■ Plaintiff argues that ROC's disclosures about the *Olympic Countess's* winter 1998–99 itinerary were partial and fragmentary because at the time the March 1998 brochure was published, the vessel lacked two required federal certificates, rendering the affirmative representations about the vessel's plan for the Orinoco Cruise materially misleading. The documents supplied by Plaintiff demonstrate that although the winter 1998–99 brochure advertised that the *Olympic Countess* would sail for the Orinoco Cruise, the vessel lacked the required certificates to do so, a fact which ROC did not disclose and does not deny. *See* Paper 22, Ex. L–O, Q, S. Thus, Plaintiff has demonstrated that ROC made a partial or fragmentary assertion of fact which misled Plaintiff toward injury and that, therefore, ROC owed it a duty to disclose. Although Plaintiff's evidence is insufficient to prove that ROC intentionally concealed information with the intent to defraud, Plaintiff has established that Defendant breached its duty to

---

**8.** Note that the duty to disclose in a fraudulent concealment case differs from the duty of care in a negligent misrepresentation case.

*See Lubore,* 109 Md.App. at 330, n. 3, 674 A.2d at 556.

disclose material facts to Plaintiff. Accordingly, Defendant's motion for summary judgment as to the claim of intentional misrepresentation by concealment is denied.

### 5. Constructive Fraud (Count V)

Because the motion for summary judgment as to intentional misrepresentation by concealment has been denied, it may not be necessary to reach Plaintiff's alternative claim for constructive fraud. The court notes that, in any event, constructive fraud typically arises from a breach of duty where a fiduciary relationship exists. *See Crawford v. Mindel,* 57 Md.App. 111, 120–21, 469 A.2d 454, 459 (Md.Ct. Spec.App.1984), *citing Scheve v. McPherson,* 44 Md.App. 398, 408 A.2d 1071 (1979). No such relationship exists here, and the motion for summary judgment will be granted.

### 6. Punitive Damages

■ Defendant has moved for summary judgment on Plaintiff's claim of $1 million in punitive damages for the alleged intentional misrepresentation by concealment. The Maryland Court of Appeals has imposed an onerous standard for plaintiffs seeking punitive damages. Under Maryland law, a plaintiff seeking punitive damages must prove "actual malice" on the part of the defendant, justifying an award of punitive damages based upon the "heinous nature of the defendant's tortious conduct ...." *Owens–Illinois v. Zenobia,* 325 Md. 420, 454, 460, 601 A.2d 633, 649–50, 652–53 (1992). The court stated in *Zenobia* that "punitive damages are awarded in an attempt to punish a defendant whose conduct is characterized by evil motive, intent to injure, or fraud, and to warn others contemplating similar conduct of the serious risk of monetary liability." *Id.* at 454, 601 A.2d at 650. Additionally, the court stated that "in *any* tort case a plaintiff must establish by clear and convincing evidence the basis for an award of punitive damages." *Id.* at 469, 601 A.2d at 657.

The Court of Appeals addressed the applicability of punitive damages in the fraud context in *Ellerin v. Fairfax Savings, F.S.B.,* 337 Md. 216, 652 A.2d 1117 (1995). The court in *Ellerin* differentiated fraud cases where the defendant makes a false representation with the "deliberate wrongdoing and evil motive that has traditionally justified the award of punitive damages" from cases where the fraud is based on "reckless disregard" or "reckless indifference." *See id.,* 337 Md. at 235, 652 A.2d at 1126. The court stated that "'reckless disregard' or 'reckless indifference' concerning the truth of the representation falls short of the mens rea which is required to support an award of punitive damages." *Id.*

■ In the case at hand, as discussed above, Defendant's fraudulent concealment arose from a partial or fragmentary disclosure of facts, as opposed to an intentional concealment of facts for the purpose of defrauding Plaintiff. Thus, this action does not fall into the category of cases which support an award of punitive damages. Although Plaintiff tries to argue that ROC knowingly withheld information over the course of many months in a deliberate attempt to defraud Odyssey, this argument is based solely on inferences which cannot and do not support a finding of actual malice by clear and convincing evidence. Because Plaintiff has not succeeded in making the requisite showing for punitive damages, Defendant's motion for summary judgment as to punitive damages is granted.

### B. Plaintiff's Conditional Motion for Leave to File an Amended Complaint

■ Odyssey filed a conditional motion for leave to file an amended complaint

joining ROC, Ltd. and ROC, Inc. as defendants in the event that the court granted Defendant ROC's summary judgment motion. Although this motion will be denied as moot due to the denial of ROC's summary judgment motion, as an alternative, the court rules that it would not, in any event, have allowed Plaintiff to amend to name these new parties at this late date as explained in the following discussion.

Odyssey notes that FED. R. CIV. P. 15(a) favors the liberal amendment of pleadings "when justice so requires," and argues that justice requires the requested amendment. This argument is based on the contention that ROC, Ltd. and ROC, Inc. knew or should have known that the action would have been brought against them but for a mistake concerning their identity, and that no undue prejudice would result from amendment. Odyssey further contends that unless it is able to amend, it is likely to be forever barred from suing ROC, Ltd. or ROC, Inc. for the claims at issue because the applicable statutes of limitation have probably expired.

The modified scheduling order issued by this court set November 15, 2002 as the deadline for joinder of additional parties and amendment of pleadings.[9] *See* Paper no. 25, Ex. B. Plaintiff filed the instant motion on November 22, 2002, one week past the deadline in the scheduling order. While a motion to amend a complaint after the deadline in a scheduling order triggers Rule 15(a) concerning liberal amendment

of pleadings, it also triggers Rule 16(b) governing modifications to a scheduling order. *See also Daso v. The Grafton Sch., Inc.*, 181 F.Supp.2d 485, 488 (D.Md.2002). The court recently noted in *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373 (D.Md.2002) that the standards for satisfying Rule 15(a) and Rule 16(b) are at odds. While Rule 15(a) states that "leave shall be given freely when justice so requires," Rule 16(b) states that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge...." Noting that neither the Supreme Court nor the Fourth Circuit has dealt decisively with the interplay of the two rules when a motion to amend is filed after the deadline set in a scheduling order has passed, the court followed the two-step analysis set forth in *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W.Va.1995). *See Rassoull*, 209 F.R.D. at 373. Under that framework, once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b); if the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under 15(a). *Id., citing Marcum*, 163 F.R.D. at 254.

In discussing the good cause standard, the court stated that

the Rule 16(b) analysis is less concerned with the substance of the proposed amendment. Instead, Rule 16(b)'s "good cause" standard focuses on the

9. The court's original January 22, 2002 scheduling order established March 8, 2002 as the initial deadline for filing a motion to add a defendant. *See* Paper no. 25, Ex. A. On a joint motion by the parties, the court issued a modified scheduling order on June 6, 2002 extending the deadline to November 15, 2002. On September 5, 2002, Plaintiff's counsel proposed to ROC further modifications to the scheduling order, including moving the deadline for filing motions for joinder of additional parties and amendment of pleadings to 135

days after the assumed denial of ROC's summary judgment motion. ROC agreed to the Plaintiff's proposed modifications, *except* for the one further extending the date for filing any motions to add parties. *See id.*, Ex. D. The court issued an order on September 11, 2002 modifying some aspects of the scheduling order, but not the November 15, 2002 deadline for filing a motion to join additional parties and/or amend pleadings. *See id.*, Ex. E.

timeliness of the amendment and the reasons for its tardy submission. Because a court's scheduling order " 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril,'" *Potomac Electric Power Co. v. Electric Motor Supply, Inc.,* 190 F.R.D. 372, 375–376 (D.Md. 1999), *quoting Gestetner v. Case Equipment Co.,* 108 F.R.D. 138, 141 (D.Me. 1985), a movant must demonstrate that the reasons for the tardiness of his motion justify a departure from the rules set by the court in its scheduling order.

The primary consideration of the Rule 16(b) "good cause" standard is the diligence of the movant. Lack of diligence and carelessness are "hallmarks of failure to meet the good cause standard." *West Virginia Housing Dev. Fund v. Ocwen Technology Xchange, Inc.,* 200 F.R.D. 564, 567 (S.D.W.Va.2001). "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. *If that party was not diligent, the inquiry should end.*" *Marcum,* 163 F.R.D. at 254, *quoting Johnson [v. Mammoth Recreations, Inc.],* 975 F.2d [604] at 609 [ (9th Cir.1992) ].

*Rassoull,* 209 F.R.D. at 373–74.

In the case at hand, like the plaintiff in *Rassoull,* Odyssey failed to seek the required modification of the scheduling order that is necessary before the court can address the merits of the motion for leave to amend the complaint. Odyssey's motion focuses solely on arguments for leave to amend the complaint, but does nothing to explain the tardiness of the motion itself or allege that the motion could not have been made in a timely fashion. As early as January 16, 2002, when ROC filed its answer containing affirmative defenses, Odyssey was on notice that ROC would argue that ROC, Ltd. was the proper defendant in this case. ROC reaffirmed this affirmative defense during the course of mediation held on August 28, 2002 before Judge Charles B. Day. *See* Paper no. 25, Ex. G (Unger Decl., ¶ 2). Even the captions on Odyssey's complaint and subsequent pleadings which read "Odyssey Travel Center, Inc. v. RO Cruises, Inc. . . . . agent for Royal Olympic Cruises, Ltd. and Royal Olympic Cruise Lines, Inc." indicate that Plaintiff was aware long before it filed its motion for leave to amend the complaint that ROC was the agent of ROC, Ltd. Only when faced with ROC's motion for summary judgment did Odyssey seek conditionally to amend the complaint to join two parties which it has known about since the inception of the litigation.

Odyssey's sole explanation for filing the motion for leave to amend to join two additional parties after the November 15, 2002 deadline had passed is that its counsel "overlooked" the deadline. As the court noted in *Rassoull,* "[l]ack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.'" 209 F.R.D. at 374. The tardiness is particularly egregious given that Odyssey was put on notice as early as January 2002 that ROC would assert that ROC, Ltd. was the proper defendant in the case. Thus, even had the motion for leave to amend not been mooted by the denial of Defendant's motion for summary judgment, Odyssey's lack of explanation for the tardiness of its submission would leave the court with no choice but to deny its motion to amend.[10]

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be granted as to Counts II and V and as to the claim for punitive damages and will be denied as to Counts I, III and IV. Plain-

---

**10.** Having found that there is no good cause for modification of the scheduling order, the court would not have had to reach the Rule 15(a) analysis.

tiff's motion for leave to file an amended complaint will be denied. A separate Order will be entered.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this 9th day of May, 2003, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendant's motion for summary judgment BE, and the same hereby IS, GRANTED as to Counts II (promissory estoppel) and V (constructive fraud) and as to the punitive damages claim, and DENIED as to Counts I (breach of contract), III (negligent misrepresentation) and IV (intentional misrepresentation by concealment);

2. JUDGMENT BE, and the same hereby IS, ENTERED in favor of Defendant RO Cruises, Inc. and against Plaintiff Odyssey Travel Center, Inc. with respect to Counts II and V and the claim for punitive damages;

3. Plaintiff's motion for leave to amend the complaint BE, and the same hereby IS, DENIED; and

4. The Clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties.